# Krislov & Associates, Ltd.

20 North Wacker Drive, Suite 1300
Chicago, Illinois  60606
Telephone: 312-606-0500
Facsimile:  312-606-0207

### Notice of Complaint and Request for Waiver of Formal Service

To:     The City of Chicago, a Municipal Corporation
    c/o     Jennifer Naber
        Joseph Gagliardo
        LANER MUCHIN, LTD.
        515 N. State Street, 28th Floor
        Chicago, Illinois  60610

    Case Title:    Michael W. Underwood, et al. v. City of Chicago, et al.
    Docket No.:    2013 CH 17450
    Court:    In the Circuit Court of Cook County, Illinois, Chancery Division

A lawsuit has been commenced against you (or the entity on whose behalf you are addressed) in the above-titled action.  A copy of the complaint is attached to this notice.

This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the complaint.  The cost of service will be avoided if we receive a signed copy of the waiver within 30 days after the date designated below as the date on which this Notice and Request is sent.  We have enclosed a stamped and addressed envelope for your use.  An extra copy of the waiver is also attached for your records.

If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you.  The action will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to appear or serve an answer to the complaint until 60 days from the date designated below as the date on which this request for waiver of service was sent.

Further, your compliance with this request does not thereby waive any objection to the venue or to the jurisdiction of the court over your person.  You may refuse to waive service of this summons.  Summons will be served upon you if you do not return the enclosed waiver.

I affirm that this request is being sent to you on behalf of the plaintiff, this **26th** day of **July, 2013**.

By: _____
        Clinton A. Krislov
        KRISLOV & ASSOCIATES, LTD.
        20 North Wacker Drive, Suite 1350
        Chicago, Illinois  60606
        (312) 606-0500

To:    Krislov & Associates, Ltd.
        20 North Wacker Drive, Suite 1300
        Chicago, Illinois  60606

Re:    Case Title:   <u>Michael W. Underwood, et al. v. City of Chicago, et al.</u>
      Docket No.:  <u>2013 CH 17450</u>
      Court:      <u>In the Circuit Court of Cook County, Illinois, Chancery Division</u>

### Acknowledgment of Receipt of Complaint and Waiver of Service

      I acknowledge receipt of your request that I waive service of a summons in the above-titled action.

      I have received a copy of the complaint in the action via messenger, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

      I agree to save the cost of service of summons and an additional copy of the complaint in this lawsuit by not requiring that Named Defendant, **The City of Chicago, a Municipal Corporation,** be served with judicial process.

      **The City of Chicago** will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

      I understand that a judgment may be entered against **The City of Chicago** if an answer or appropriate motion is not served upon you within 60 days after the date this request was sent, <u>**September 26, 2013**</u>.

**Named Defendant**_____

_____    by _____
**Date**               Signature

**Printed / Typed name:**

      _____

**Title:** _____



**Cook County
Clerk of the Circuit Court**
Electronic Docket Search
Chancery, Domestic/Child Support, Civil and Law Divisions

Case Information Summary for Case Number
2013-CH-17450

Filing Date: 7/23/2013
Division: Chancery Division
Ad Damnum: $0.00

Case Type: CLASS ACTION
District: First Municipal
Calendar: 09

### Party Information

**Plaintiff(s)**
UNDERWOOD MICHAEL C

**Attorney(s)**
KRISLOV CLINTON A
20 N. WACKER #1350
CHICAGO IL, 60606
(312) 606-0500

VUICH JOSEPH M

SCACHITTI RAYMOND

MCNULTY ROBERT

DORN JOHN E

SELKE WILLIAM J

ARCHER JANIECE R

MUSHOL DENNIS

AGUINAGA RICHARD

SANDOW JAMES

SANDOW CATHERINE A

JOHNSTON MARIE

IN EXHBIT 1 TO THIS 320 A

| **Date of Service** | **Defendant(s)** | **Attorney(s)** |
| --- | --- | --- |
| | CITY OF CHICAGO | |
| | TRSTEES,LABORERSFUND | |
| | TRUSTEES, POLICEFUND | |
| | TRUSTEES,FIREFUND | |
| | TRUSTEES,MUNICIPAL | |

### Case Activity

Activity Date: 7/23/2013     Participant: UNDERWOOD MICHAEL C

CLASS ACTION COMPLAINT FILED (JURY DEMAND)

Court Fee: 567.00     Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013     Participant: UNDERWOOD MICHAEL C

EXHIBITS FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013     Participant: VUICH JOSEPH M

EXHIBITS FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013     Participant: SCACHITTI RAYMOND

EXHIBITS FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013     Participant: MCNULTY ROBERT

EXHIBITS FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013     Participant: DORN JOHN E

EXHIBITS FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                   Participant: SELKE WILLIAM J

EXHIBITS FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                   Participant: ARCHER JANIECE R

EXHIBITS FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                   Participant: MUSHOL DENNIS

EXHIBITS FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                   Participant: AGUINAGA RICHARD

EXHIBITS FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                   Participant: SANDOW JAMES

EXHIBITS FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                   Participant: SANDOW CATHERINE A

EXHIBITS FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                   Participant: JOHNSTON MARIE

EXHIBITS FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                   Participant: IN EXHBIT 1 TO THIS 320 A

EXHIBITS FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                   Participant: UNDERWOOD MICHAEL C

CASE ELECTRONICALLY FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                   Participant: UNDERWOOD MICHAEL C

SPECIAL PROCESS SERVER STANDING ORDER-FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                    Participant: VUICH JOSEPH M
SPECIAL PROCESS SERVER STANDING ORDER-FILED
Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                    Participant: SCACHITTI RAYMOND
SPECIAL PROCESS SERVER STANDING ORDER-FILED
Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                    Participant: MCNULTY ROBERT
SPECIAL PROCESS SERVER STANDING ORDER-FILED
Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                    Participant: DORN JOHN E
SPECIAL PROCESS SERVER STANDING ORDER-FILED
Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                    Participant: SELKE WILLIAM J
SPECIAL PROCESS SERVER STANDING ORDER-FILED
Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                    Participant: ARCHER JANIECE R
SPECIAL PROCESS SERVER STANDING ORDER-FILED
Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                    Participant: MUSHOL DENNIS
SPECIAL PROCESS SERVER STANDING ORDER-FILED
Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                    Participant: AGUINAGA RICHARD
SPECIAL PROCESS SERVER STANDING ORDER-FILED
Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                    Participant: SANDOW JAMES
SPECIAL PROCESS SERVER STANDING ORDER-FILED
Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013                                    Participant: SANDOW CATHERINE A
SPECIAL PROCESS SERVER STANDING ORDER-FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013

Participant: JOHNSTON MARIE

SPECIAL PROCESS SERVER STANDING ORDER-FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013

Participant: IN EXHBIT 1 TO THIS 320 A

SPECIAL PROCESS SERVER STANDING ORDER-FILED

Attorney: KRISLOV CLINTON A

Activity Date: 7/23/2013

Participant: UNDERWOOD MICHAEL C

CASE SET ON CASE MANAGEMENT CALL

Date: 11/20/2013
Court Time: 1000
Court Room: 2402

Judge: NOVAK RITA M.
Attorney: KRISLOV CLINTON A

---

Please note: Neither the Circuit Court of Cook County nor the Clerk of the Circuit Court of Cook County warrants the accuracy, completeness, or the currency of this data. This data is not an official record of the Court or the Clerk and may not be represented as an official court record.

If data does not appear in a specific field, we likely do not have the responsive data in our master database.

Start a New Search

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

Michael C. Underwood, Joseph M. Vuich, Raymond )
Scacchitti, Robert McNulty, John E. Dorn, William J. )
Selke, Janiece R. Archer, Dennis Mushol, Richard )
Aguinaga, James Sandow, Catherine A. Sandow, Marie )
Johnston, and 320 other Named Plaintiffs listed in )
Exhibit 1, )
                                         )
                     Plaintiffs, )
vs. )
                                           )
CITY OF CHICAGO, a Municipal Corporation, )
                                           )
                    Defendant, )
                                           )
and )
                                           )
Trustees of the Policemen's Annuity and Benefit Fund )
of Chicago: Amer Ahmad, Juan Carlos Avila, Kenneth )
Hauser, Michael K. Lappe, James P. Maloney, )
Stephanie Neely, Lois A. Scott, Brian Wright; and )
                                           )
Trustees of the Firemen's Annuity and Benefit Fund of )
Chicago: Amer Ahmad, Walter Carlson, Dan P. )
Fabrizio, Anthony Martin, Stephanie Neely, Michael )
Shanahan, Charles Stewart, III, Susana Mendoza; and )
                                           )
Trustees of the Municipal Employees' Annuity and )
Benefit Fund of Chicago: Amer Ahmad, Anthony )
Clancy, Martin J. Durkan, Timothy G. Guest, Stephanie )
Neely; and )
                                           )
Trustees of the Laborers' & Retirement Board )
Employees' Annuity & Benefit Fund of Chicago: Amer )
Ahmad, John Arvetis, Carol Hamburger, William L. )
Irving, Michael LoVerde, Stephanie Neely, Joseph )
Rinella, Lois Scott, )
                    Defendants.

**CLASS ACTION**
**COMPLAINT**

JURY TRIAL DEMANDED

Previous Nos. 01 CH 4962 and
87 CH 10134

*2013 CH 17450*
———
*Cal. 9*
*filed 7/23/2013*

### CLASS ACTION COMPLAINT
**By Participants in the City of Chicago's Annuitant Healthcare Plan**
**For Declaratory Relief Against the City of Chicago and**
**the Trustees of the Police, Fire, Municipal Employees and Laborers**
**Annuity and Benefit Funds**

1

1.      This Complaint seeks permanent relief for annuitant healthcare participants in litigation that has continued off and on for 26 years.

2.      <u>Background of the Case</u>. This case was originally filed October 19, 1987 (<u>City v. Korshak, et al., (Trustees) and Ryan, et al. (Participants),</u> Circuit Court of Cook County, No. 87 CH 10134) by the City to enable it to terminate its Annuitant Healthcare coverage for participants in the City's four Annuity and Benefit Plans, and recover monies expended under the Plan in prior years. The trustees/board members of the four affected annuity and benefit funds, and the annuitant healthcare plan participants class asserted counterclaims, seeking to force the City and the Pension Funds' trustees to continue annuitant healthcare coverage under the terms of the Annuitant Healthcare Plan as in effect on October 1, 1987 (through the August 23, 1989, date the Pension Code was amended in this respect.) After dismissing the City's claims, the case proceeded on the counterclaims by the Funds and Participants' claims against the City. A trial was conducted in 1988 before Hon. Albert Green. Prior to the verdict, the City and Trustees entered into a 10-year class action settlement that was approved by the Circuit Court over the participant class' objections, and affirmed by the Illinois Appellate Court.

3.      At the conclusion of that ten-year settlement, the participants moved to revive the litigation, were initially denied by Judge Green, reversed by the Illinois Appellate Court, reviving the litigation, under Docket No. 01 CH 4962, which eventually was resolved in 2003 by another ten-year agreement, this time approved by all parties and the court, settling the dispute for the period through June 30, 2013; again with rights of participants to thereafter reassert their rights/entitlement to healthcare coverage in their retirement.

4.      Participant Class Counsel's motion to revive the litigation under the <u>City v. Korshak</u> case was denied, the judge now assigned to that calendar ruled that assertion of the

2

Participants' retained rights would have to be done in a new action. Hence, this Complaint is filed to assert Participants' rights to healthcare in their retirements.

5.    With respect to the claims asserted herein by the participants, the participants sue as plaintiffs, seeking relief against the City as a defendant (for its actions and announced intention to reduce the healthcare benefits provided to class members), and seeking a declaration that the Funds, as additional defendants, must continue their current subsidy for class members for life without reduction.

6.    Class members' uniform claim is that under the 1970 Illinois Constitution Article XIII Section 5, they are each entitled to the unreduced level, determined at the date they began participation in any of the four affected Annuity & Benefit Plans, of annuitant health benefits provided by the City and as then subsidized by their particular Plan.

7.    Class/Subclass Definitions.  Class members' claims are identical across the four Funds, varying only by which of the following categories/subclass the particular participant's entitlement to healthcare arises from (as the retiree or his/her spouse/dependent):

> i) a person who retired by 12/31/1987 (the "Korshak" sub class) (this was the initial class certified in the 1987 Korshak Settlement)).

> ii) a person who retired after 12/31/1987, but before 8/23/1989 (the "Window" or "Jacobson" sub class) (the class that retired after the Korshak class date, but prior to the enactment of P.A.86-273 incorporating language of the Korshak settlement)).

> iii) a person who began their participation in one of the Funds (initial hiring date) before 8/23/1989 (thus entitled to benefits of participation no less than when they entered the system); and

> iv) a person who began their participation after 8/23/1989 (participants who were hired after P.A.86-273's enactment).

8.    For purposes of the Original litigation, continuing through all of the Settlements, undersigned counsel Krislov is the court-certified class counsel for the first two subclasses.  In

3

the 2003 Settlement, the Funds trustees represented the post-8/23/1989 retiree participants. However, going forward, the Krislov firm has been engaged by participants in all four categories, and the Krislov firm asserts that it is the appropriate class counsel for the court to certify for all four participant classes.

9.      Summary of the case.  From before October 1987, to a period beyond August 23, 1989, the City's annuitant healthcare plan was continued without change.

10.     The 1988 Trial.  During June 1988, the Cook County Circuit Court conducted a trial of the trustees' and participants' claims that existing annuitants are entitled to permanent coverage under the City Plan as it existed on October 1, 1987.  In that trial, the Participants asserted the following claims:

(a)     Contract.  The city bound itself contractually to cover the then-existing annuitants healthcare for life charging premiums equal to the statutory supplement paid by the pension funds; the premiums were subsidized by the Funds--the annuitants' entire premium for Police and Fire annuitants, $25 per month for Municipal and Laborers.

(b)     Detrimental Reliance/Estoppel.  The city, through its authorized officials, affirmatively induced the annuitants to act to their detriment, in joining and continuing their coverage the City's annuitant healthcare plan, in reliance upon the City's assurance of lifetime medical care coverage, and the City is now estopped from terminating or reducing those benefits.

(c)     Illinois Constitution.  The Annuitant Healthcare Plan, as in effect on October 1, 1987 through August 23, 1989, was a benefit of participation in an Illinois statutory pension or retirement system, so 1970 Illinois Constitution, Art. 13, Section 5, prohibits the city's attempt to eliminate or reduce Lifetime fixed rate subsidized Medical Care as a retirement benefit.

(i)     The City of Chicago Retirement Medical Plan is a pension and retirement benefit of City of Chicago employment.

(ii)    A participant's right to coverage under the plan vests, and cannot be reduced after his entry into the system.

4

        (iii)     A participant's right to coverage under the City's Retiree Healthcare Plan vests no later than his retirement, and the terms of the benefits cannot be reduced thereafter.

    (d)     Illinois Constitution, Special Legislation. The statutory provisions (P.A. 86-273 and P.A. 90-32/June 27, 1997) as they purport to change the terms or protection of class members' healthcare coverage are invalid special legislation because they apply only from employment by a named municipality. (1970 Ill. Const. Art. IV, Sec. 13).

11.     After the trial, but prior to a decision being rendered by the Court, the City and the Pension Fund trustees reached an agreement between themselves which, through 1997, reduced the City's share of annuitant healthcare coverage from 100% of the cost in excess of the healthcare levy, to "at least" 50% overall; increased the Pension Funds' subsidy or healthcare levy; and substantially increased the cost to annuitants.

12.     Pursuant to the Settlement Agreement, the participants, at the end of 1997, were restored to whatever rights they held at the beginning of the case.

13.     Unfortunately, no permanent resolution of the retiree healthcare issue was ever reached. Consequently, the litigation revived once again thereafter, culminating in a series of Settlements which though reaching the end of their terms on June 30, 2013 for the 2003 Settlement, all explicitly preserve Class members' rights to assert:

> "any claims with regard to the provision of annuitant healthcare benefits, other than claims arising under the prior settlement of this Action or under the 1989, 1997, or 2002 amendments to the Pension Code, or for damages relating to the amounts of premiums or other payments that they have paid relating to healthcare under any prior health care plans implemented by the City, including this Settlement Agreement." (2003 Settlement Agreement, Sec. IV.J)

14.     Accordingly, Plaintiffs, for themselves and the Participant class-members, respectfully ask this Court to declare the rights of participants under the Illinois Constitution, the Illinois Pension Code, and common law, as follows:

5

(i) Declare that all participants are entitled to permanent coverage under the plan in effect on the day they joined the system, with any improvements as were added thereafter.

(a) For the participants by a person who retired prior to 8/23/1989:

Order the City to restore the annuitant healthcare plan to the terms in effect during the period October 1, 1987 through August 22, 1989, for persons who have been continuous participants during the class period to the present. (The "Korshak" class, or "1987 Participant Class", defined as all persons who were participants on December 31, 1987; plus the Jacobson or Window class of those participants who first became annuitant healthcare plan participants after December 31, 1987 but on or before August 23, 1989, are also entitled to participate on the same basis.

(b) For those participants who began their participation in one of the City's Annuity and Benefit Funds (i.e., initial hire date) prior to 8/23/1989:

permanent coverage under the plan then in effect—i.e., a fixed-rate plan subsidized by the participant's Fund at the premium or no less than the highest rate in effect at any time.

(c) For those participants who began their participation after 8/23/1989:

permanent coverage under the plan in effect on their hire date, with Fund subsidy at the highest rate in effect during their participation.

I.      **Facts about the Retiree Healthcare Plans for City of Chicago Retirees, and the Original Korshak litigation.**

**Plaintiffs, Class Members believe that there is no material dispute as to the following facts:[2]**

---

[2] References and Authorities Cited. Unless otherwise described:

1)      All statutory references are to either the provisions of Illinois law in effect during the period October 1, 1987 through August 23, 1989, including generally, provisions of the Illinois Municipal Code, Ill.Rev.Stat. Ch. 24 ("Municipal Code § _____") or to the Illinois PensionCode, Ill.Rev.Stat. Ch. 108-1/2 ("Pension Code § _____")(1986), or to their subsequent provisions under the Pension Code under the current ILCS format 40 ILCS 5/.

**Parties:**

15.    Plaintiffs.  Each of the Named Plaintiffs listed in Exhibit 1 hereto is a participant in one of the four City of Chicago Annuity and Benefit Funds, having the indicated hire and retirement date.

---

2)    Trial Exhibits are referred to as identified in the Trial of this matter June 20-22, 1988, either as introduced at trial or by stipulation.  "DX" means Defendants' Exhibits, "CX" indicates a City Exhibit.

3)    Testimony by individuals is referred to by their last name and the appropriate page in the trial transcript.

*June 20, 1988 Witnesses - Afternoon Session*

| Witness | Role | Page |
|---|---|---|
| James B. Waters, Executive Director | Police Fund | 4-48 |
| James Capasso, Jr., Executive Director | Laborers Fund | 49-65 |
| Norman S. Holland, Trustee | Fire Fund | 66-94 |
| Thomas J. Stack | Municipal Fund | 94-99 |

*June 21, 1988 Witnesses - Morning Session*

| Witness | Role | Page |
|---|---|---|
| Edward Arenz | Blue Cross | 8-36 |
| Peter Jundersits | Annuitant | 37-43 |
| Richard Gayne | Annuitant | 43-53 |
| Charles T. Wilhelm | Annuitant | 53-59 |
| Edwin Ogonowski | Annuitant | 59-63 |
| Benedict J. Scacchitti | Annuitant | 63-70 |
| Bernard P. Sweeney | Annuitant | 70-74 |
| Sam Venturella | Annuitant | 74-81 |
| Robert Shackleton | Annuitant | 81-84 |
| Fred Hince | Annuitant | 84-93 |
| Maryanne Hester | Spouse | 93-98 |
| Constance Becker | Widow | 98-101 |

*June 21, 1988 Witnesses - Afternoon Session*

| Witness | Role | Page |
|---|---|---|
| Sharon Gist Gilliam | City Chief Operating Officer | 3-82 |
| Daniel K. Kubasiak | Former City Budget Officer | 83-108 |

*June 22, 1988 Witnesses*

| Witness | Role | Page |
|---|---|---|
| Ronald Picur | City Comptroller | 114-149 |
| S. Nathan Williams | City Risk Manager | 150-169 |
| Al John Fattore | City GS Director of Finance | 169-188 |

7

16.     The CITY OF CHICAGO (the "City") is a municipal corporation organized in accordance with Section 1-1-1 of the Illinois Municipal Code, Ill.Rev.Stat. Ch. 24, ¶1-1-1.  The City is sued as a defendant.

17.     <u>The Pension Funds</u>.  The POLICEMEN'S ANNUITY & BENEFIT FUND OF THE CITY OF CHICAGO (the "Police Fund"), the FIREMEN'S ANNUITY, BENEFIT FUND OF THE CITY OF CHICAGO, (the "Firemen's Fund" or the "Fire Fund"), the MUNICIPAL EMPLOYEES, OFFICERS AND OFFICIAL ANNUITY AND BENEFIT FUND (the "Municipal Fund"), and the LABORERS' AND RETIREMENT BOARD EMPLOYEES' AND BENEFIT FUND OF CHICAGO (the "Laborers Fund") were each created and operate under, respectively, Articles 5, 6, 8 and 11 of the Illinois Pension Code, Ill.Rev.Stat. Ch. 108-1/2, to provide for and administer, <u>inter alia</u>, certain annuity, disability insurance and healthcare programs under the Illinois Pension Code (Previously contained in Ill.Rev.Stat. Ch. 108-1/2, the "Pension Code's current provisions are contained in 40 ILCS 5/Arts. 5, 6, 8 and 11).

18.     <u>The Funds as Necessary Parties</u>.  The Funds are necessary parties in any event, because of their involvement in the statutory scheme.  However, they are sued as cross-defendants only for a declaration that they are not permitted to reduce their subsidy for class members from the highest levels enjoyed by each participant; currently $95 monthly for those not Medicare qualified, $65 for those who are Medicare qualified.  If they acknowledge their obligation as such under 1970 Ill. Const. Art. XIII §5, then the Participants/Cross-Plaintiffs seek no further substantive relief against them.

19.     The Trustees, <u>et. al.</u>, and their successor trustees were or are the Members/Trustees of their respective Fund's Board of Trustees, sued in their official capacities, and may be retitled for their current trustees.

8

20. <u>City Officials</u>. By their offices with the City, (i) the City Comptroller is a member of the Board of Trustees of the Firemen's and Municipal Fund and his designee sits as a member of the Laborers' Fund. Pension Code §§6-174, 8-192 and 11-181; (ii) The City Treasurer, City Clerk and City Fire Marshall are also <u>ex officio</u> members of the Firemen's Fund Board (§6-174); (iii) the City Treasurer also sits on the Police Fund's Board (§5-178) and Municipal Fund's Board (§8-192). Each Board has one annuitant member (5-178, 6-174, 8-192, 11-181). The rest of each Board is either appointed by the Mayor or elected by the active employees who participate in the Fund.

21. <u>The City's Medical Benefits Program</u>. Since approximately 1964, the City has maintained a medical benefits program in which annuitants are entitled to participate. Many of the Funds' annuitants have participated, with the active City of Chicago employees, in the group medical benefits program sponsored by the City. That program, since the mid-1970's, has been administered on a <u>self-funded</u> (<i>i.e.</i>, the City pays these claims itself rather than obtaining "insurance" coverage from an outside third party provider), "<u>claims made</u>" basis (meaning that sufficient money is appropriated each year for claims expected in that year only).

22. The City's healthcare program has generally been administered by private carriers who are reimbursed by the City (often referred to as "ASO" for "Administrative Services Only."

23. <u>Annuitant Participation</u>. Based on the most recent reconciliation report for 2011, the participants total 24,721, including annuitants of all four Annuity & Benefit Funds, plus survivors and dependents who participate in the City's Annuitant Medical Plan for their primary medical coverage.; Policemen's Fund participants 9,183, Firemen's Fund 3,253, Municipal Employees' Fund 9,522 and Laborers' Fund 2,763.

24. These annuitants are now predominantly over age 65. Due to age and existing medical conditions, some (probably most of them) would be unable to obtain their own medical coverage at an affordable cost or to qualify for alternative medical coverage at all. Based on their initial hire date, many of them cannot qualify for Medicare coverage from their City employment; some are without sufficient qualifying employment quarters at all, and can obtain Medicare coverage only by paying additional premiums.

**Relevant Constitutional and Statutory Provisions**

25. <u>Illinois Constitution</u>. Under the 1970 Illinois Constitution, municipal pension membership benefits are enforceable contractual relationships which may not be diminished or impaired:

> "Membership in any pension or retirement system of the State, any unit of local government . . . or any agency or instrumentality thereof, shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired."
> 1970 Illinois Constitution, Art. 13, §5.

26. <u>Group Health Benefits for City Annuitants have been a benefit of Participation in the City's Annuity & Benefit Funds since at least 1982.</u> The City of Chicago's annuitant healthcare plan in existence from 1982 through at least 1989, was the statutory result of a "handshake" agreement between the City's Byrne administration, the Police and Fire Unions and/or Funds trustees, under which the City agreed to provide healthcare coverage to annuitants at a fixed-rate monthly premium($55 for non-Medicare qualified, $21 for Medicare-qualified persons) that was to be subsidized by the Police and Fire Funds' payment of the annuitant's monthly premium, that was financed by a special tax levy for the Funds. This was understood and intended to be both a benefit of a person's employment by the City and participation in the annuitant's respective annuity and benefit fund.

27. _Statutory Levy/Subsidy._ Incorporating this agreement, P.A.82-1044 was enacted into the Illinois Pension Code obligating the Policemen's Fund (5-167.5) and the Firemen's Fund (6-164.2) to contract to provide group health insurance for all annuitants, with the basic monthly premium to be contributed by the City in an amount of $55.00 per month for annuitants who are not qualified for the Medicare program; $21.00 for Medicare-qualified annuitants.

28. _No medicare coverage for existing subclass of retirees whose original hire date precedes April 1, 1986._ Local government employees who were originally hired and began their work prior to April 1, 1986 (federal Combined Omnibus Budget Reconciliation Act of 1985 ("COBRA," PL 99-272 § 13205(a)) cannot qualify for healthcare coverage under the Medicare plan by their government employment, regardless of their length of service.

29. Accordingly, since all of the class members of the 1987 Participant Class and the Pre-8/23/89 retiree participants began their City employment prior to April 1, 1986, none of them can qualify for Medicare coverage by reason of their employment for the City of Chicago. _Arenz_ at 29 (as to 1987 Class).

30. However, all existing City workers who were first hired _after_ March 31, 1986, have accrued or are accruing qualifying calendar quarters of employment towards the required 29 quarter condition for full coverage under the Medicare program upon reaching age 65. _Arenz_ at 29.

31. Other existing government employees can be subjected to the Medicare program by an agreement between the City and the federal government, if the City desires to do so.

32. _Unique Position of these retirees, and their substantial numbers._ Consequently, the class member annuitants who began their service for the City prior to April 1, 1986 are the last class of City workers who will not be protected by the Medicare program. Although the

11

number of these participants is currently known only to the City and the Funds, it certainly

numbers a substantial portion of the class, since even with only twenty years of service, the

earliest of the Medicare-qualified by government work would not have begun retiring before

2006.

33.    <u>Statutory Subsidy: Police and Firemen's Funds</u>.  Since January 12, 1983, and

continuing through 8/22/1989 (the date of enactment of P.A.86-273) Pension Code Sections 5-

167.5, 6-164.2, respectively, required the Police and Firemen's Funds' Boards to each contract

for group health insurance and required the City to pay for a portion of its cost, for electing

annuitants, out of the City's levy for its contribution to the Police Fund.

                              *    *    *

(b)    The Board shall contract with one or more carriers to provide health
       insurance for all annuitants.

                              *    *    *

(d)    The Board shall pay the premiums for such health insurance for each
       annuitant with funds provided as follows:

       The basic monthly premium for each annuitant shall be
       contributed by the city from the tax levy prescribed in Section 5-
       168 [6-165 for Firemen's Fund], up to a maximum of $55 per
       month if the annuitant is not qualified to receive Medicare
       benefits, or up to a maximum of $21 per month if the annuitant is
       qualified to receive Medicare benefits.

       If the basic monthly premium exceeds the maximum amount to be
       contributed by the city on his behalf, such excess shall be
       deducted by the Board from the annuitant's monthly annuity,
       unless the annuitant elects to terminate his coverage under this
       Section, which he may do at any time.

34.    Thus, the agreement benefited all three affected groups.  The City was able to

provide a valuable benefit without having to fund a pay increase out of its budget; the Funds

were able to contract for the healthcare coverage (with the City as the carrier) without invading

their pension assets, and the Police and Fire employees and annuitants could anticipate and rely

on adequate healthcare for life at no net cost to the annuitant, fixed-rates for coverage of spouses and dependents.

35. <u>Statutory Subsidy: Municipal and Laborers' Funds</u>. During 1984, legislation was added to the Illinois Pension Code, P.A. 84-23, establishing similar Group Health Care Plans under the Pension Code for Municipal and Laborers Funds annuitants.

36. The Municipal and Laborers' Funds statutory directive for group health benefits differed from Fire and Police. The Municipal and Laborers' Boards are directed to "approve" a plan and the subsidy is equal to a flat $25.00 per month. Section 11-160.1 Ill.Rev.Stat. Ch. 108-1/2, Sec. 11-160.1 (eff. August 16, 1985) for the Laborers' Fund; Pension Code Section 8-164.1, Ill.Rev.Stat Ch. 108-1/2, Sec. 8-164.1 (eff. July 19, 1985) for the Municipal Fund. Those statutes provide in relevant part:

> "Each employee annuitant in receipt of an annuity on the effective date of this Section and each employee who retires on annuity after the effective date of this Section, may participate in a group hospital care plan and a group medical and surgical plan approved by the Board if the employee annuitant is age 65 or over with at least 15 years of service. The Board, in conformity with its regulations, shall pay to the organization underwriting such plan the current monthly premiums up to the maximum amounts authorized in the following paragraph for such coverage.
>
> As of the effective date the Board is authorized to make payments up to $25 per month for employee annuitants age 65 years or over with at least 15 years of service.
>
> If the monthly premium for such coverage exceeds the $25 per month maximum authorization, the difference between the required monthly premiums for such coverage and such maximum may be deducted from the employee annuitant's annuity if the annuitant so elects; otherwise such coverage shall terminate."

37. <u>Municipal and Laborers provisions purport to create non-protected benefits</u>.

Different from the already existing provisions for Police and Firemen, the 1984 legislation

creating Pension Code Sections 8-164.1 and 11-160.1 characterizes the group hospital and

medical care benefits provided for Municipal and Laborers' Funds participants as not being

pension or retirement benefits under Section 5 of Article XIII of the Illinois Constitution of 1970.

38.     Legal issue of the legality of creating a non-protected benefit of participation.  It

has never been determined that the Municipal and Laborers Funds' limiting statutory language is

effective to strip these benefits of participation in a statutory pension plan of their Art. XIII,

Sec.5 protection against diminution or impairment.

39.     Prior to August 23, 1989, the Police and Fire provisions had never contained such

limiting language.  See Pension Code §§5-167.5 and 6-164.2.

40.     The City Has Historically Paid For Retiree Healthcare Costs.  Since the mid-

1970's, when the City health benefits plan became self-funded, the City has been paying all or a

significant portion of the costs of the annuitants' medical benefits.   Indeed, the City has actually

functioned as the self-insured carrier for the annuitants' health care plans for all four relevant

Funds.

41.     Premiums Charged To Funds/Annuitants.  Effective April 1, 1982, the City

established the following monthly rates for the Funds' annuitants' medical benefits coverage:

| | |
|---|---|
| Under Age 65 – Single | $ 55.00 |
| Under Age 65 – Family of Two | 110.00 |
| Under Age 65 – Family of Three or more | 150.00 |
| Medicare Eligible – Single | 21.00 |
| Medicare Eligible – Two | 42.00 |
| One Over Age 65, One Under Age 65 | 76.00 |

42.     These rates for the Funds' annuitants' medical benefits coverage remained

unchanged to a date beyond August 23, 1989.

14

43.     Thus, from April 1, 1982 through August 23, 1989, annuitants received their healthcare coverage as a benefit of participation in their Funds, who obtained that coverage from the City, who acted as the self-insured carrier for the plan, and paid all of the "insurer's" costs of the Funds' annuitants medical benefits program to the extent that they have exceeded the premium rates.

44.     <u>Communication of Coverage to Annuitants</u>.  In approximately 1984, the City prepared a booklet advising individual annuitants of their rights, benefits and the terms of the City's annuitant medical care plan.  This document was distributed to employees at or about the time of their retirement and was also submitted to existing annuitant participants as part of the re-enrollment process.

45.     <u>Pre-Retirement Seminars</u>.  From at least 1984 until sometime in 1987, the City also presented a series of "Pre-Retirement Seminars" to employees.  Employees near retirement were invited to attend to inform them as to the terms of various benefits upon retirement including the City's annuitant medical benefit plan.  <u>Ogonowski</u> at 60 ff; DX 24, 26.

46.     City officials of the Health and Benefits Office were present, in person, at the seminars to explain the terms of these provisions.

47.     In describing these provisions, referring City employees and their attendees were told that they would be able to participate in the health plan <u>for life</u>, that their own coverage was to be for life at no cost; and that they would only have to pay for additional coverage for spouse and dependents.  *<u>Jandersits</u> at 40, 42; <u>Wilhelm</u> at 55; <u>Ogonowski</u> at 61; <u>Sweeney</u> at 72; <u>Mrs. Hester</u> at 95-96.

48.     It thus became widely understood among City employees that they could rely on this subsidized fixed-rate plan for their lifetime following retirement from their City

employment; at no out-of-pocket premium cost for Police and Fire annuitants own coverage, subsidized at $25 per month for Municipal and Laborers annuitants.

49.     Actions by Retirees.  Many employees worked, retired and made plans on the basis of the representations made to them in these seminars, *e.g.*, Jandersits at 40.  Additionally, it was the common understanding among City employees that the City would provide medical coverage for life upon retirement, (Wilhelm at 55-6; Scacchitti at 68; Hince at 85) and that was a significant factor for many individuals in choosing to work for the City, rather than work for a private sector employee, *e.g.*, Gayne at 44-45.

50.     Many individual employees retired on the basis that this coverage existed, Carlisle Moore, Fire Stip. #1; Feinberg, Fire Stip. #3, and did not seek medical coverage elsewhere.

51.     Many employees made retirement plans in reliance on that promise.  Sweeney at 72-73; Zalley (Fire Stip. #5).

52.     Some people purchased property elsewhere in reliance on the continued existence of medical coverage upon the terms described.  Shackleton at 82-83.

53.     Most of the pre-8/23/1989 retiree class member annuitants who survive, are now over age 74; some are in ill health (*e.g.*, Scacchitti at 66ff) or have family members whose condition is such that they would have great difficulty qualifying for separate individual medical coverage either at affordable cost or at all, (*e.g.*, Wilhelm at 56; Ralicki, Fire Stip. #2).

54.     The usual practice in the Chicago area during the pre-8/23/1989 class period was that large public sector employers paid the entire cost for retiree medical coverage premiums, Arenz at 19, and did not retroactively change healthcare benefits for retirees.  Arenz at 23, 28.

55.     The City's Budget/Appropriations for Retiree Healthcare Benefits.  The City funds used for annuitants healthcare benefits in the years 1980 through 1987 were included in the

City Budget, under line items designated under the decimals ".042," generally under Department 9112: Department of Finance-General.

56.     <u>Appropriation Language: 1980-84; 1986-87</u>.  In the 1980 through 1984, 1986 and 1987 City Budgets, line item .042 was described in the following terms:

> For health maintenance organization premiums or cost of claims and administration for hospital and medical care provided to eligible employees and their families including employees on duty disability leave. (Source DX37, 40, 41.)

57.     <u>1985 Appropriation Language</u>.  In the 1985 City Budget, line item .042 was described as:

> For the health maintenance organization premiums or cost of claims and administration for hospital and medical care provided to eligible employees and their families including employees on duty disability leave <u>and for partial payment of the cost of claims and administration for hospital and medical care provided to certain participants in the Policemen's Annuity and Benefit Fund, Firemen's Annuity and Benefit Fund, Laborers' and Retirement Board Employees' Annuity and Benefit Fund, and Municipal Employees Annuity and Benefit Fund</u>. (DX39, emphasis added.)

58.     The 1985 language was inserted by the City Council's Budget Committee to clarify the annuitant medical coverage under line item .042.  <u>Kubasiak</u> at 89.

59.     <u>Manner of Budgeting</u>.  Each year beginning at least 1980, the line item .042 budget appropriation was accomplished by taking the previous year's actual expenditure (to the extent already spent, plus estimated cost through the end of the current year) and increase it by an amount reflecting anticipated healthcare inflation or cost increase for the coming budget year. <u>Gilliam</u> at 8-9ff, 39-40.

17

60.     The previous year's expenditure included expenditures paid by the City for annuitant medical claims without any dispute as to their authorization under the annual appropriation. Gilliam at 10-11.

61.     Thus, the appropriated dollars for each budget year included annuitant medical expenses. This was known to the City's Budget Office (Gilliam at 10-11, 18; Fattore at 179) and Council members believed that the annuitants were covered under the City's plan (Gilliam at 18-19) although the City disputes whether the language of the appropriation legally extends to annuitant medical expenditures.

62.     The amounts requested, recommended, appropriated and expended for active and annuitant medical expenses (in excess of the "premiums" received from the Pension Funds and the annuitants in each year) were:

| Year | Dept. Request | Mayor's Recom. | Appropriation | Actual Expenditures |
|------|---------------|----------------|---------------|---------------------|
| 1979 | [open] | [open] | [open] | $37,002,963 |
| 1980 | [open] | $48,000,000 | [open] | $46,742.071 |
| 1981 | $56,906,000 | $56,906,000 | $56,225.00 | $64,569.800 |
| 1982 | $66,200,000 | $66,200,000 | $65,870,000 | $75,100,196 |
| 1983 | $75,250,000 | $75,250,000 | $74,650,000 | $86,289,215 |
| 1984 | $88,500,000 | $88,500,000 | $87,200,000 | $84,465,869 |
| 1985 | $89,288,200 | $89,288,200 | $89,438,000 | $91,506,685 |
| 1986 | $97,942,000 | $97,942,000 | $97,942,000 | $83,705,038 |
| 1987 | $107,158,500 | $107,158,500 | $107,158,000 | |

Source: DX37-43.

63.     Calculation and Deletion of 1988 Annuitant Healthcare Appropriation. For 1988's requested appropriation, the City Risk Management Department calculated the cost of annuitant healthcare to be approximately $18 million and the Budget Department eliminated it from the budget request at Ms. Gilliam's direction. Gilliam at 37; Fattore at 184-187.

18

64.   <u>Communication of Plan to Annuitants: Regarding Termination of Coverage.</u>

During the period preceding August 22, 1989, the City of Chicago's Annuitant Medical Benefits

Plan provides as follows regarding "Termination of Coverage:"

> Coverage for you and your eligible dependents will terminate the
> first of the month following:
>
> -    the month a deduction is <u>not</u> taken from your annuity, or
> -    the month you reach the limiting age for City-paid benefits,
>      if you have not arranged for deductions from you annuity
>      check.
>
> In addition, coverage for you and your eligible dependents will
> terminate the earliest of
>
> -    the date it is determined that you have knowingly submitted
>      false bills or bills for ineligible dependents for
>      reimbursement under this Plan
> -    the date the Plan is terminated, or
> -    the date the Plan is terminated for the class of annuitant of
>      which you are a member
>
> for hospital and medical care provided to eligible employees and
> their families including employees on duty disability leave.

Source: DX33, City X3.

65.   At least to August 23, 1989, there had never been any explicit reservation by the

City of any right to amend or terminate the Plan, nor any explicit reservation of any right of the

funds to reduce the subsidy.

66.   <u>Cost and Loss Experience.</u>   During the early years of the program the premiums

paid by the funds or the annuitants generally covered the costs of claims for reimbursement of

annuitant medical costs.

67.   During 1984, the costs of medical coverage for active employees and annuitants

began to exceed the amount of premiums that were being charged. DX33.

19

68.     Regardless of whether the costs were greater or less than the "premiums" charged, the City had never changed the rates charged as premiums under the Plan from April 1, 1982 to date after August 23, 1989.

69.     No Premium Charge for Annuitant.  The operation of the Plan was that Police and Fire Funds' annuitants were not required to pay anything out-of-pocket as premiums for their own coverage,[3] Municipal and Laborers' Funds' annuitants had to pay either nothing or $30.00 per month (depending on their Medicare qualification) and paid their own funds for only the additional cost of family dependent coverage.

70.     City's Past Efforts to Contain Costs.  Beginning in 1984, various members of the City administration began to focus on containing healthcare costs.  Gilliam at 20, 31; Carmody Memo 04/15/83 DX9, DX11 and 12.

71.     Re-Enrollment.  One effort to contain costs was to require re-enrollment of plan participants both active and retired.  By this all plan participants were required to produce evidence of their continued qualifications to participate in the City's medical plan.  Gilliam at 40; DX17.

72.     The City actively solicited annuitants to re-enroll in the plan.  Gilliam at 40; DX18.

73.     During enrollment, the City did not suggest that annuitants seek or investigate the desirability of obtaining coverage elsewhere.  Gilliam at 40-41.

74.     Nor did the City ever advise the annuitants that their plan had been or would be considered terminated, by this re-enrollment requirement.  Gilliam at 79, 81.  Moreover,

---

[3] In fact, annuitants do pay a portion of each claim as with usual insured plans.  Picur at 142-3; Williams at 154-64.  The City's plan requires the insured to "coinsure" (i.e., pay a percentage of each claim after the first X hundred dollars), 20% of the following X thousand dollars insuring that individuals do share in the actual out-of-pocket costs of their medical care.

although there is some assertion that this re-enrollment actually constituted a "termination" of the old plan and institution of a new plan, Gilliam at 80-81, the City's termination of its annuitant healthcare plan could have been achieved only by terminating both the active and annuitant plan together, Arenz at 27, which was not done.

75.     The annuitant re-enrollment took place during 1985.

76.     1984 "Trial Balloon" to Raise Costs of Coverage. A proposal was also submitted under which the premiums would be increased for participation under the City's plan. Gilliam at 20; DX15.

77.     A certain September 10, 1984 report called "City of Chicago Annuitant Medical Care Benefits," DX12, noted that expenditures were exceeding the "premiums" received, and proposed that the rates paid by the annuitants be increased by 100% effective two months later, in November of 1984, and increased by another substantial percentage three months after that, in January of 1985. DX33; CX52.

78.     This proposed rate change was communicated to representatives of the four pension funds. However, the response of the funds and their participants was so strong and negative that the effort was abandoned. Gilliam at 52-53.

79.     As a result, the premiums charged annuitants for participation in the City's annuitant medical plan had not changed since April 1, 1982, and the annuitants and their families reasonably expected and relied on that situation to remain unchanged for their lives in retirement.

80.     The Ryan Case. In late 1986 or early 1987, the City administration became aware of a substantial liability that would soon have to be paid to the City's pension funds as a result of the decision in Ryan v. Chicago, 148 Ill.App.3d 638, 499 N.E.2d 517 (Ill. App. 1986) (petition for leave to appeal denied, 505 N.E.2d 361 (1987). In the Ryan case, the City had converted

pension tax levies to its own benefit, investing the money while in its hands and retaining the earnings it had made when turning over the principal months later. The Illinois Appellate Court held that the city would have to repay all earnings made on pension fund tax monies used by it during the period 1979 through 1983 and would have to restore similar earnings made in subsequent years. Picur at 143-4.

81.     The City's Reaction. Among City officials, the expectation was that this "Ryan" liability would total approximately $20 million. Gilliam at 76.

82.     In the spring of 1987, a meeting was held among certain members of the City administration to develop a strategic plan for handling the City's financial problems, medical costs, and the Ryan case. Gilliam at 19ff; Picur at 118-9.

83.     At that meeting, were Sharon Gilliam, the City's then Chief Administrative Officer and Chief Operating Officer; then-Corporation Counsel, Judson Miner; his Assistant Corporation Counsel, Matthew Piers; then-Comptroller Ronald Picur; and other individuals.

84.     At that meeting, a strategic "game" plan was developed to counteract the effect of the Ryan decision. Picur at 144; DX28 at p. 2 Margin Notes by Gilliam.

85.     At that meeting, the Legal Department advised the others of the argument that the appropriations in the line item ".042" for healthcare would be asserted as not permitting payments to annuitants. Picur at 119.

86.     A plan was developed to approach the pension funds, advise them that the City would sue the pension funds to recover the monies spent on annuitant healthcare going back at least to 1980 unless the pension funds agreed to give up their claim to recovery under the Ryan case. Picur at 143-4.

22

87.     Ronald Picur.  While this was being planned, then-City Comptroller Ronald D.

Picur continued to sit as a trustee of the Firemen's Annuity and Benefit Fund, the Municipal

Fund and the Laborers' Fund without advising the other trustees of the City's intentions.  Picur at

120.

88.     Subsequently, on or about May 8, 1987, the City's Corporation Counsel contacted

each of the pension funds, advised them of the Ryan judgment's $25 million potential, and the

City's belief that the medical payments (in similar $25 million amount) had been illegally paid

and would have to be recovered from each pension fund unless they agreed to waive the Ryan

claim.  Each fund rejected the offer.

89.     Thereafter, on October 19, 1987, the City Corporation Counsel sent each Fund a

letter in which he advised the Fund that he had directed the City's benefits Office to cease

making healthcare payments to pension fund annuitants as soon as each of the respective pension

funds enters contracts for health insurance, but in no event later than January 1, 1988.

90.     The City actually did seek to assert these issues as an offset in the Ryan case, but

was denied by the presiding judge in that case.

91.     This Suit Filed by the City.  On October 19, 1987, the City then filed suit in this

case seeking to terminate the coverage, force the pension funds to take over the annuitant

medical cost obligation and reimburse the City for the $58,000,000.00 it had spent on annuitant

medical coverage through September, 1987.

92.     Participants' Intervention and Class Certification. Martin Ryan and the other

individual plaintiffs in the Ryan case sought and were granted leave to intervene for annuitants'

interest in this case, represented by Krislov.  May 5, 1988 Order.  Their motions for certification

of the class as a class action on behalf of the annuitants were granted by this Court, with undersigned counsel as class counsel.

93. The pension funds each moved to dismiss the City's claim and moved to file counterclaims of their own against the City to continue the coverage unchanged or at least provided a reasonable period in which the plans could obtain alternative medical coverage.

94. On May 16, 1988, this Court dismissed the City's claim against the Pension Fund's Trustees but left standing the counterclaims against the City to force the City's annuitant healthcare coverage to continue.

95. The matter was tried on an expedited basis before this Court during the summer of 1988, and then continued just prior to the filing of briefs when the parties appeared to be near settlement.

96. The settlement was itself delayed since the necessary enabling amendments to the Illinois Pension Code were initially vetoed by the Governor and were not enacted and signed into law until August 23, 1989, P.A.86-273.

97. <u>The Settlements' Expiration and explicit preservation of participants' rights to assert their entitlement to lifetime protection of their benefits</u>. Participants' claims for coverage during the periods thereafter through June 30, 2013 were resolved by interim settlements which have now expired, but all of them explicitly preserving participants' rights to assert their claims to permanent retiree healthcare thereafter. Korshak 2003 Settlement at Section IV. J., and *see* <u>Ryan v. City and Korshak</u>, Ill. App. Court Nos. 1-98-3465 and 1-98-3667, June 15, 2000 Rule 23 Order, reversing the Circuit Court's refusal to hear the Participants' claims, as revived following the 1997 end of the first settlement.

**Back to the Present**:

24

98.     May 15, 2013, the City declares its intention to reduce benefits beginning January 1, 2014, and to eliminate all of the City's retiree healthcare plans by January 1, 2017. (Attached Exhibit 2, City Letter dated May 15, 2013). Anticipating the June 30, 2013 end of the applicable settlement periods, the City on May 15, 2013 issued a letter to all retiree healthcare participants that it intends to:

(i)     extend current retiree healthcare benefits to the end of 2013;

(ii)    maintain the current level of benefits for pre-8/23/1989 retirees for their lifetimes;

(iii)   make changes beginning January 1, 2014 to the plans with respect later participants, and terminate their coverage entirely, by January 1, 2017.

Ex. 2, City Letter dated May 15, 2013.

99.     The Funds Subsidies after June 30, 2013. Per P.A. 86-273 and its following statutes, the Funds statutory authority to subsidize the healthcare ended June 30, 2013, but was recently extended by P.A.98-43, signed into law June 28, 2013, extending the current statutory authorization of the subsidies at their current levels until the earlier of January 1, 2017, or such date as the City terminates its retiree healthcare plans.

100.    The Funds' trustees will not continue subsidies beyond any time period provided in the applicable statute, and otherwise refuse to continue the subsidies as benefits of participation protected solely by Ill. Const. Art. XIII, Section 5.

101.    Participants assert that the Funds' obligations to provide and subsidize healthcare coverage for annuitants are themselves benefits of participation in their respective Funds protected by the Illinois Constitution Article XIII, Section 5 from being diminished from the levels in existence during any Participant's lifetime.

**II.     Class Allegations**

25

102. **The "Korshak" subclass-12/1/1987 Retiree Participants.** The claims for these participants are the same ones that have been certified to proceed as a class action with respect to the 1987 participants (the "Korshak" subclass).

103. **The "Window" or Jacobson subclass-Retirees during the 1/1/1988-8/23/1989 "window".** As part of the 2003 Settlement, the action was also certified for the additional or expanded group to include the participants via a person who retired after 1987, but prior to August 23, 1989, who share the Korshak class' claim to common law vesting (entitlement to permanence for the benefits as they existed on one's retirement date), plus statutory and constitutional protections against diminution of benefits which have already begun at a certain level. (This group, who had filed a parallel case in federal court, led by the Retired Chicago Police Assn. and participant plaintiffs led by first named plaintiff Jacobson, are commonly referred to as the "window" retirees; persons who retired during the 1/1/88-8/23/89 "window" period, after the Korshak class date and before 86-273 was enacted.)

104. **Pre-8/23/1989 Hirees' subclass.** The third group of class members, who share common legal issues, are those who "vested" in their retirement benefits by their joining one of the relevant Funds on or before August 23, 1989, regardless of their retirement date. (This group might be called the "Pre-8/23/89 Hiree Vesters"). Their entitlement is based primarily on their claim to the 1970 Constitution, Art. XIII, Section 5's protection against diminution or impairment of their benefits of participation in one of the four Funds determined at their entry into the system, i.e., their hire date. Buddell v. Bd. of Trustees, State Universities Retirement System, 118 Ill.2d 99, 103, 514 N.E.2d 184, 186 (1987).

105. **Subclass 4-Post 8/23/1989 Hirees.** The last subclass are those individuals who began their participation (by initial hired date) after the passage of P.A.86-273, which added the

26

questionable language to the statute purporting to label the retiree healthcare benefits as not

protected by Art. XIII, Section 5, whose claim to permanence of their benefits will turn on the

purely legal issue whether the legislature can legally create a benefit of participation that is not

protected by Article XIII Section 5.

106. All four participant groups, as classes or subclasses, readily qualify for class

certification as to many issues of entitlement to a fixed-rate subsidized retiree healthcare

program against the City and their respective Fund, and no participants' entitlement conflicts

with any others.

107. Numerosity. Each group numbers in the thousands, so joinder of all members of

each class or subclass is impracticable.

108. Common Questions. Each group shares, internally and with each other group, the

common issues of whether their right to a fixed-rate subsidized plan is protected from being

diminished or impaired by the Illinois Constitutional protections of benefits of participation in an

Illinois pension fund. Differences between each group's entitlement under other theories may

arise. However, they do not conflict with each other. For example, pre-1988 retirees might

additionally claim detrimental reliance that may not be available to pre-1989 vesters who have

not yet retired. But the entitlement claims made for any one of the three groups would not

conflict with either other group's entitlement claims.

109. Adequacy of Representation. Undersigned counsel Krislov has been engaged by

hundreds of participants and will present representative parties for each of the four participant

categories, who will fairly and adequately protect the interest of the classes. The proposed

participant class representatives understand the nature of the claim, the purpose of the litigation,

their role in it, and have no interests antagonistic to the class. And participants' undersigned

27

counsel is well experienced and capable of representing the class or classes, and has long acted as the certified class counsel in this specific case, already.

110.    <u>Appropriateness</u>.  This court has already appropriately found that the class action is an appropriate method for the fair and efficient adjudication of the controversy, and it remains so.

## COUNTS AND CAUSES OF ACTION

### COUNT I - Diminution of Pension Benefits - State Constitution

111.    Plaintiffs re-allege paragraphs 1 through 108.

112.    The 1970 Illinois Constitution Article XIII, §5 declares that participants' memberships in their retirement systems are contractual relationships, the benefits of which shall not be diminished or impaired:

> "membership in any pension or retirement system of the State... shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired." (*See* Constitution of 1970, Art. 13, §5).

113.    Participants' healthcare coverage, terms and Fund subsidy under the Illinois Pension Code, as it existed on their entry into their particular retirement system (and with improvements thereafter) are benefits of membership in a pension or retirement system of a unit of Illinois local government, that Art. 13, §5 prohibits from being diminished or impaired.

114.    The defendants' actions and declared rights to reduce that benefit constitute unlawful impairment of the participants' contractual rights under Art. 13 §5 of the 1970 Illinois Constitution.

### COUNT II - Common Law Breach of Contract

115.    Plaintiffs' re-allege paragraphs 1 through 112.

28

116.    As per the 1970 Illinois Constitution, Art. XII, §5, the plaintiffs and class members have a contractual right to the fixed-for-life subsidized healthcare premiums in effect on their retirement date.

117.    Also, independent of the Art. XIII, §5 of the 1970 Illinois Constitution, under common law principles of contract, the plaintiffs and pre-8/23/1989 retirement or hire date class members have a contractual right to the plan in effect during the period October 1, 1987 to August 23, 1989, at the $55/21 fixed-rate-for-life healthcare premiums, subsidized by their respective Funds (the entire annuitant premium for Police and Fire annuitants, the $25 or higher subsidy paid at any time for Municipal or Laborer annuitants) without reduction.

118.    The plaintiffs and the class members have performed all the duties and obligations required of them under the terms of the contract.

119.    The defendant City of Chicago has breached its contractual obligation by unilaterally requiring the plaintiffs and class members to pay increased healthcare premiums.

### COUNT III - Common Law Estoppel

120.    Participants re-allege paragraphs 1 through 117.

121.    The City and funds are estopped by their own conduct from changing or terminating the annuitant coverage to a level below the highest level of benefit during a participant's participation in the group healthcare benefits.

122.    The City is estopped from changing or terminating the coverage for class period retirees without affording the Funds a reasonable time in which to obtain alternative coverage from another carrier.

### COUNT IV - U.S.C. § 1983

123.    Plaintiffs re-allege the forgoing paragraphs of the complaint.

29

124. Each plaintiff and class member has a property right to a lifetime healthcare plan, unreduced from the best terms during a person's participation in one of the retirement funds.

125. Each healthcare premium charged to the annuitants by the defendants which exceeds the person's best entitled premium, is a deprivation of a property right secured under the Fourteenth Amendment and actionable under 42 U.S.C. § 1983.

126. Each increase in the healthcare premiums, beyond the fixed-for-life subsidized amount, is a violation of a property right secured under the Fourteenth Amendment and actionable under 42 U.S.C. § 1983.

127. The City's actions were and are performed knowingly and under the color of law by the City of Chicago and its officials, for whom the City is liable herein.

128. The City of Chicago is a "person acting under the color of law" for purposes of 42 U.S.C. § 1983.

129. The actions of each of the defendant pension Funds were and are performed knowingly and under the color of law by the Pension Fund officials for whom the fund is liable herein.

**COUNT V - Impairment of Contract - Federal Constitution**

130. Plaintiffs re-allege the foregoing paragraphs.

131. Art. 13, § 5 of the Illinois Constitution states that membership in any pension or retirement system of the state shall be an enforceable contractual relationship, the benefits of which shall not be diminished or impaired.

132. By increasing the healthcare premiums charged to annuitants, or adversely changing the terms or subsidy, the City and the Funds have denied or impaired the plaintiffs' and class members' contractual rights.

133.    The stripping of the Illinois Constitution's protection of group health benefits provided under the Pension Code, by reducing them or re-labeling them as "not benefits of participation" under P.A. 86-273 and other statutes impairs contractual rights of participants.

134.    The United States Constitution prohibits States from passing laws impairing the obligations of contract:

> "No State shall... pass any... Law impairing the Obligation of Contracts...."
> (United States Constitution, Art. I, Section 10).

135.    Each such adverse change in the group health statutory provisions of the Pension Code, including, as well, increases in healthcare premiums, is an impairment of a contractual right in violation of Art. I, § 10, cl. 1 of the Federal Constitution, secured under the Fourteenth Amendment and actionable under 42 U.S.C. § 1983.

136.    <u>Korshak and Window Retirees</u>.  With respect to the class members who retired before August 23, 1989, the statutory recharacterization of group health benefits for Fund participants, and each healthcare premium charged in excess of the fixed-for-life subsidized rate alleged herein are thus impairments of a contractual right in violation of the United States Constitution.

## III.    Conclusion

137.    For the above reasons, participants in each class protected by the Illinois Constitution and by the doctrine of estoppel, are entitled to judgment declaring their rights to a lifetime healthcare coverage under the best terms in effect during their participation in one of the City's four Annuity and Benefit Plans against both the City of Chicago and the Trustees of their respective Annuity and Benefit Funds.

**Prayer for Relief**

Wherefore, Plaintiffs, on behalf of themselves and the class members, demand judgment against the City of Chicago and the defendant pension Funds as follows:

A.  Certify the case as a class action for City of Chicago Retiree Healthcare Plan Participants, with the four proposed subclasses:

   i.  Korshak subclass-12/31/1987 annuitant participants,

   ii.  Window subclass-retired Post-Korshak, but pre-8/23/1989,

   iii.  Pre-8/23/1989 Hiree Vesters, and

   iv.  Participants –First hired date after 8/23/1989;

   all represented by undersigned Counsel;

B.  Declare the pre 8/23,1989 retiree participants' entitlement to resumption of the fixed-rate subsidized $55/$21 monthly premium retiree healthcare plan, fully subsidized by the Funds;

C.  Declare that PA 86-273 and PA 90-32 are (i) invalid to the extent the statutes purport to either create a class of non-protected benefits of membership or (ii) invalid as applied to the class to convert existing protected benefits into non-protected benefits;

D.  Issue a preliminary, and eventually a permanent injunction prohibiting the City and Funds from reducing the group health benefits provided to class members from the level any of them have been provided as a participant, from when plaintiffs and the class members began their participation in the Plan to the present;

E.  Award Plaintiffs Attorneys fees and costs;

F.  Any and all other relief the Court deems just and proper.

Dated: July 23, 2013

By:  /s/ Clinton A. Krislov
     Attorney for Plaintiffs, Participants
     Clinton A. Krislov

32

Clinton A. Krislov, Esq.
Kenneth T. Goldstein, Esq.
KRISLOV & ASSOCIATES, LTD.
Civic Opera Building
20 North Wacker Drive, Suite 1300
Chicago, Illinois 60606
(312) 606-0500
Attorney Nos. 26711 / 91198

# EXHIBIT 1

Exhibit 1

## EXHIBIT 1: NAMED PLAINTIFFS

| Last Name | First Name | Retired | Years of Service/Hire Date | Category | Fund |
|---|---|---|---|---|---|
| Abbey | Leon | 11/26/2008 | 3/26/1990 | CPD | Policemen's |
| Aguinaga | Richard J. | 6/2/2012 | 10/25/1971 | CPD | Policemen's |
| Alongi | Rosemarie | 1/20/1991 | 9/29/1952 | CPD | Policemen's |
| Anderson | Michelle | 11/15/2010 | 1/3/1977 | CPD | Policemen's |
| Andler | Robert | 8/16/2001 | 4/3/1972 | CPD | Policemen's |
| Andruzzi | Joseph J. | 3/2/2002 | 1/5/1969 | CPD | Policemen's |
| Angelo | Thomas | 3/15/2001 | 6/6/1966 | CPD | Policemen's |
| Antol | Robert P. | 11/27/2009 | 5/18/1981 | CPD | Policemen's |
| Archer | Janiece | 01/00/2010 | 00/00/1987 | Municipal | Municipal |
| Augustine | Lawrence | 3/1/2004 | 6/10/1968 | CPD | Policemen's |
| Azara | John T. | 4/15/2005 | 11/3/1969 | CPD | Policemen's |
| Azzaro | Donald J. | 1/15/2001 | 6/15/1970 | CPD | Policemen's |
| Baker | Madelyn | 00/1976 | 00/00/1948 | CPD | Policemen's |
| Banahan | Dennis M. | 4/1/1999 | 3/3/1969 | CPD | Policemen's |
| Barreto | Nelson | 02/00/2003 | 31 yrs. | CPD | Policemen's |
| Battistella | John | 2/14/1997 | 7/1/1963 | CPD | Policemen's |
| Battistella | Irene C. | 03/00/2009 | 11/00/1987 | Municipal | Municipal |
| Bellavia | Ronald J. | 2/15/2004 | 4/3/1972 | CPD | Policemen's |
| Berman | Barry | 06/00/2011 | 04/00/1973 | Municipal | Municipal |
| Bernacki | Gregory E. | 3/16/2003 | 2/19/1973 | CPD | Policemen's |
| Blake | Marion | 7/1/1998 | 8/00/1965 | Municipal | Municipal |
| Blanc | Curtis E. | 4/15/2004 | 4/3/1972 | CPD | Policemen's |
| Blanc | Karen A. | 8/2/2011 | 4/14/1989 | CPD | Policemen's |
| Bobko | John R. | 3/15/2002 | 10/20/1969 | CPD | Policemen's |
| Bolda | Dennis J. | 3/15/1998 | 3/4/1968 | CPD | Policemen's |
| Bonk | James R. | 11/15/2005 | 11/1/1977 | CPD | Policemen's |
| Bonke | Fred | 4/24/2000 | 3/1/1965 | CPD | Policemen's |
| Borski | Anthony E. | 7/1/1992 | 2/26/1962 | CPD | Policemen's |
| Botwinski | JoAnne | 5/16/2007 | 8/11/1986 | CPD | Policemen's |
| Boyle | Leslie | 2/15/2005 | 1/3/1977 | CPD | Policemen's |
| Breska | Victor J. | 3/15/2000 | 12/11/1968 | CPD | Policemen's |
| Brockman | Ellwood W. | 1/6/2000 | 6/14/1971 | CPD | Policemen's |
| Brosnan | Patrick | 7/15/2000 | 6/8/1968 | CPD | Policemen's |
| Caliendo | June G. | 4/15/2001 | 2/27/1978 | CPD | Policemen's |
| Camden | Patrick T. | 11/1/1998 | 9/14/1970 | CPD | Policemen's |
| Campion | William E. | 10/15/2003 | 2/19/1973 | CPD | Policemen's |
| Canchola | Donna J. | 4/18/1977 | 7/31/2007 | Municipal | Municipal |
| Canchola | Robert A. | 4/1/1985 | 6/30/2010 | Municipal | Municipal |
| Capesius | Michael C. | 4/15/2002 | 1/5/1967 | CPD | Policemen's |
| Carlo | Patricia | Dec'd 1987 | 1955 | CPD | Policemen's |

## EXHIBIT 1: NAMED PLAINTIFFS

| Last Name | First Name | Retired | Years of Service/Hire Date | Category | Fund |
|---|---|---|---|---|---|
| Carr | Elaine | 05/00/1989 | 04/00/1961 | CPD | Policemen's |
| Carroll | Paul B. | 5/1/1998 | 7/3/1967 | CPD | Policemen's |
| Cervenka | Richard G. | 4/15/2004 | 2/19/1973 | CPD | Policemen's |
| Clancy | Patrick M. | 5/16/2001 | 12/9/1968 | CPD | Policemen's |
| Clark | Jeanne | 7/4/2001 | 5/00/1975 | CPD | Policemen's |
| Clarke | James R. | 3/15/2005 | 3/2/1970 | CPD | Policemen's |
| Clarke | Patricia S. | 2/15/2004 | 11/29/1982 | CPD | Policemen's |
| Clepp | Kathy | | 12/16/1985 | CPD | Policemen's |
| Clisham Sr. | John E. | 9/16/1995 | 1/24/1966 | CPD | Policemen's |
| Cole | Jon | 8/2/1996 | 7/22/1968 | CPD | Policemen's |
| Conlisk III | James B. | 11/15/2009 | 3/2/1970 | CPD | Policemen's |
| Conrad | Susan M. | 5/3/2012 | 7/10/1995 | CPD | Policemen's |
| Conrad | Walter A. | 4/3/2001 | 11/8/1965 | CPD | Policemen's |
| Considine | Joseph E. | 5/15/1995 | 2/26/1962 | CPD | Policemen's |
| Conway | Carol J. | 12/31/2000 | 11/17/1986 | CPD | Policemen's |
| Conwell | Hugh | 6/8/1998 | 11/22/1972 | CPD | Policemen's |
| Corcoran | John E. | 3/15/2002 | 7/8/1968 | CPD | Policemen's |
| Cowell | Raymond M.` | 7/5/2000 | 6/4/1973 | CPD | Policemen's |
| Coyne | Michael J. | 8/4/1994 | 3/12/1962 | CPD | Policemen's |
| Cronk | Virigina M. | 4/16/1999 | 2/19/1974 | CPD | Policemen's |
| Cunningham | James J. | 1/20/1989 | 00/00/1955 | CPD | Policemen's |
| Dalton | Tom | 12/1/2000 | 2/16/1977 | CFD | Fireman's |
| Danihel | William | 6/12/1988 | 3/16/1957 | CPD | Policemen's |
| Danzl | Joseph M. | 3/15/2000 | 6/13/1966 | CPD | Policemen's |
| Davis | William B. | 4/15/2005 | 12/11/1978 | CPD | Policemen's |
| DeCola | Salvatore L. | 3/15/1999 | 3/4/1968 | CPD | Policemen's |
| DeFrancisco | Peter G. | 1/3/1998 | 6/20/1966 | CPD | Policemen's |
| DeFranza | Donald | 1/3/1998 | 5/31/1965 | CPD | Policemen's |
| DeGiulio | William | 10/2/2002 | 9/27/1965 | CPD | Policemen's |
| DeGryse | James J. | 5/16/1992 | 12/16/1959 | CPD | Policemen's |
| DeVivo | Rosalie | Decd 12/31/1989 | 08/00/1962 | CPD | Policemen's |
| Dicks | Kenneth | 4/4/1992 | 6/22/1964 | CPD | Policemen's |
| Dickson | Robert M. | 4/15/1998 | Mar-70 | CPD | Policemen's |
| Dorich | Gerald | 3/15/2002 | 3/2/1970 | CPD | Policemen's |
| Dorn | John E. | 4/15/2001 | 7/7/1969 | CPD | Policemen's |
| Dragon | Dennis | 7/16/1996 | 6/6/1966 | CPD | Policemen's |
| Drnek | Donald | 12/31/2001 | 7/00/1957 | CPD | Policemen's |
| Droba | Gerard | 1/16/2006 | 10/18/1976 | CPD | Policemen's |
| Drummond | Richard L. | 4/15/1992 | 6/5/1961 | CPD | Policemen's |
| Drust | Wayne W. | 4/15/2001 | 4/3/1972 | CPD | Policemen's |

## EXHIBIT 1: NAMED PLAINTIFFS

| Last Name | First Name | Retired | Years of Service/Hire Date | Category | Fund |
|---|---|---|---|---|---|
| Dubielak | Ronald | 2/16/2004 | 3/19/1973 | CPD | Policemen's |
| Dunn | Terrence L. | 11/30/2008 | 6/15/1970 | CPD | Policemen's |
| Dunn Sr. | Lawrence J. | 4/15/2004 | 3/19/1973 | CPD | Policemen's |
| Durbak | Andres | 8/15/2000 | 11/21/1972 | CPD | Policemen's |
| Dyckman | Barbara | 4/15/2008 | 10/18/1976 | CPD | Policemen's |
| Dyckman | Louis | 6/16/2000 | 2/5/1968 | CPD | Policemen's |
| Dziedzic | Dennis | 2/16/2006 | 10/22/1973 | CPD | Policemen's |
| Egan | William G. | 10/16/2004 | 7/26/1971 | CPD | Policemen's |
| Eichler | Thomas | 12/9/2003 | 12/9/1968 | CPD | Policemen's |
| Eldridge | James | 5/23/2007 | 10/23/1972 | CPD | Policemen's |
| Engelsman | Richard | 1/5/2005 | 3/19/1973 | CPD | Policemen's |
| Eshoo | John C. | 1/24/1999 | 1/24/1968 | CPD | Policemen's |
| Evanish | Francis | 4/16/1996 | 5/16/1956 | CPD | Policemen's |
| Faragoi | Thomas V. | 4/1/1994 | 1/30/1961 | CPD | Policemen's |
| Farrer | Gerald L. | 6/12/1995 | 2/19/1962 | CPD | Policemen's |
| Faust | Robert | 00/00/1994 | 6/5/1961 | CPD | Policemen's |
| Ferriter | John T. | 8/15/2006 | 11/20/1972 | CPD | Policemen's |
| Ficke | Thomas R. | 4/15/2005 | 2/5/1968 | CPD | Policemen's |
| Fields | Robert M. | 6/30/1986 | 1/23/1961 | CPD | Policemen's |
| Finlayson | James R. | 7/1/2002 | 6/14/1971 | CPD | Policemen's |
| Finlayson | Donna M. | 4/15/1999 | 3/19/1973 | CPD | Policemen's |
| Flanagan, Jr. | Thomas J. | 8/14/1993 | 6/14/1965 | CPD | Policemen's |
| Foley | Janice | 1/1/2004 | 12/1/1970 | CPD | Policemen's |
| Foran | John K. | 2/26/1979 | 2/18/1946 | CPD | Policemen's |
| Frank | Albert M. | 11/15/2001 | 3/31/1969 | CPD | Policemen's |
| Frederick | Arthur G. | 4/1/1996 | 00/00/1976 | CPD | Policemen's |
| Frost | Barbara C. | 4/15/2002 | 2/19/1974 | CPD | Policemen's |
| Fruin | James E. | 7/10/1991 | 2/26/1962 | CPD | Policemen's |
| Garrity | Patrick | 6/16/2005 | 6/4/1973 | CPD | Policemen's |
| Glowacki | Christine | 7/15/2011 | 7/19/1991 | CPD | Policemen's |
| Glynn-Johnson | Mary | 6/16/2005 | 6/14/1982 | CPD | Policemen's |
| Gneda | Diane | Dec'd. 1979 | | CPD | Policemen's |
| Gogliotti | Antoinette | 10/16/2006 | Aug-86 | CPD | Policemen's |
| Golczak | Anthony | 8/15/2010 | 9/29/1980 | CPD | Policemen's |
| Golon | William J. | 7/15/2006 | 10/18/1976 | CPD | Policemen's |
| Golosinski | Casimer L. | 9/16/1992 | 8/13/1962 | CPD | Policemen's |
| Gottfried | Alan J. | 1/6/1999 | 6/13/1966 | CPD | Policemen's |
| Gould | David R. | 7/15/2004 | 6/1/1964 | CPD | Policemen's |
| Gray | Curtis | 4/15/2001 | 11/4/1963 | CPD | Policemen's |
| Green | Mary | 00/00/2001 | 00/00/1978 | CPD | Policemen's |

## EXHIBIT 1: NAMED PLAINTIFFS

| Last Name | First Name | Retired | Years of Service/Hire Date | Category | Fund |
|---|---|---|---|---|---|
| Gunnell | Donald L. | 09/00/1984 | 08/00/1955 | CPD | Policemen's |
| Gutierrez | George | 11/15/2012 | 2/11/1980 | CPD | Policemen's |
| Gvozdenovich | Anthony | 2/15/2008 | 2/1/1982 | CPD | Policemen's |
| Hagele | Marvin | 04/00/2000 | 2/16/1969 | CFD | Fireman's |
| Hammermeiste | JoAnne Conne | 8/16/2010 | 6/14/1982 | CPD | Policemen's |
| Hammermeiste | Raymond F. | 2/16/2012 | 9/29/1980 | CPD | Policemen's |
| Harper | Juana J. | 8/16/2002 | 6/14/1982 | CPD | Policemen's |
| Harrington | Patrick J. | 2/2/2001 | 6/15/1970 | CPD | Policemen's |
| Hartford | Joseph B. | 1/5/2001 | 9/14/1970 | CPD | Policemen's |
| Hatzel | Joseph | 11/16/2009 | 2/12/1980 | CPD | Policemen's |
| Healy | John | 3/1/1993 | 2/00/1966 | CPD | Policemen's |
| Healy | Lawrence | 4/4/1994 | 11/4/1963 | CPD | Policemen's |
| Heidemann | Fred G. | 3/6/1986 | 3/1/1959 | CPD | Policemen's |
| Heyden | Fran H. | 00/00/1994 | 00/00/1971 | CPD | Policemen's |
| Horkavy | Gregory L. | 1/31/2010 | 9/14/1970 | CPD | Policemen's |
| Horne | Ross | 7/15/2001 | 7/25/1966 | CPD | Policemen's |
| Hourihane | Michael | 1/2/1998 | 4/19/1965 | CPD | Policemen's |
| Hujar | Richard A. | 00/00/1997 | 00/00/1965 | CPD | Policemen's |
| Ippolito | Joseph C. | 3/16/2006 | 10/25/1971 | CPD | Policemen's |
| Ippolito | Patricia | 1/25/2004 | 12/13/1993 | CPD | Policemen's |
| Ivanjack | Anthony J. | 2/22/2001 | 12/14/1970 | CPD | Policemen's |
| Januszyk | Donald | 1/15/2003 | 6/15/1970 | CPD | Policemen's |
| Jazdyk | Raymond | 3/1/1989 | 2/16/1958 | CPD | Policemen's |
| Jin | Tony H. | 1/4/2006 | 1/3/1977 | CPD | Policemen's |
| Johnson | Harold | 04/00/1996 | 10/23/1972 | CPD | Policemen's |
| Johnston | Marie C. | 5/15/2005 | 2/11/1980 | CPD | Policemen's |
| Julien | Patricia Lou | 1/15/1999 | 2/19/1974 | CPD | Policemen's |
| Kann | Vivian J. | 8/1/1984 | 00/00/1956 | CPD | Policemen's |
| Karl | Joyce L. | 5/1/1998 | 1/1/1968 | CPD | Policemen's |
| Keane | Carole L. | Dec'd 4/6/1993 | 06/00/1972 | CPD | Policemen's |
| Kehoe | James G. | 4/16/2004 | 2/19/1973 | CPD | Policemen's |
| Keller, Jr. | Frank J. | 4/15/2003 | 12/14/1970 | CPD | Policemen's |
| Kelly | Francis | 10/15/1988 | 1/23/1961 | CPD | Policemen's |
| Kern | George "Steve | 5/00/1995 | 4/11/1966 | CPD | Policemen's |
| King | Walter | 4/15/2000 | 11/20/1972 | CPD | Policemen's |
| Klauba | Bennet | 6/28/2003 | 6/14/1971 | CPD | Policemen's |
| Kliner | Donald C. | 8/12/1996 | 7/18/1966 | CPD | Policemen's |
| Kliner | Helen | 2/19/1993 | 2/19/1973 | CPD | Policemen's |
| Klodnicki | John H. | 11/1/1992 | 7/16/1966 | CPD | Policemen's |
| Kobel | Richard | 6/30/2005 | 3/19/1973 | CPD | Policemen's |

## EXHIBIT 1: NAMED PLAINTIFFS

| Last Name | First Name | Retired | Years of Service/Hire Date | Category | Fund |
|---|---|---|---|---|---|
| Kocur | Thomas M. | 4/1/2000 | 3/00/1970 | CPD | Policemen's |
| Kopbenhoefer | Charels | 9/8/1992 | 3/5/1962 | CPD | Policemen's |
| Kotowicz | James F. | 3/4/1997 | 1/22/1968 | CPD | Policemen's |
| Kouchoukos | Andrew F. | 7/31/1998 | 7/26/1971 | CPD | Policemen's |
| Kozaritz | John A. | 1/15/2000 | 2/27/1967 | CPD | Policemen's |
| Krupowicz | Kenneth G. | 2/22/2011 | 12/14/1970 | CPD | Policemen's |
| Kwiatkowski | Robert P. | 1/1/2000 | 3/1/1968 | CPD | Policemen's |
| Lambros | Kathleen | 4/1/1999 | 3/8/1976 | CPD | Policemen's |
| Lampard | Marilyn C. | 9/15/2006 | 9/8/1986 | CPD | Policemen's |
| Leracz | Edmond | 8/15/2007 | 11/3/1969 | CPD | Policemen's |
| Loftus | James R. | 3/15/2011 | 1/28/1980 | CPD | Policemen's |
| Logan | Patrick | 8/15/2007 | 6/15/1970 | CPD | Policemen's |
| Lorenz | John G. | 7/15/2002 | 6/8/1964 | CPD | Policemen's |
| Lotito | James M. | 3/00/2001 | 2/1/1968 | CPD | Policemen's |
| Lucchesi | James | 00/00/1996 | 00/00/1957 | CPD | Policemen's |
| Maderak | Terry | 4/1/2010 | 8/1/1987 | CPD | Policemen's |
| Madigan | Raymond | 8/1/2009 | 4/3/1972 | CPD | Policemen's |
| Madsen | Theodore J. | 6/15/2000 | 6/4/1973 | CPD | Policemen's |
| Majeske | Carol | 5/16/2001 | 4/13/1981 | CPD | Policemen's |
| Majeske | Albert R. | 00/00/1998 | 00/00/1966 | Laborers | Laborers |
| Makowski | Karen A. | 1/15/2007 | 12/11/1978 | CPD | Policemen's |
| Maley | Muriel M. | 4/1/1984 | 8/2/1948 | CPD | Policemen's |
| Manning | Jennifer | 3/6/2009 | 2/13/1989 | CPD | Policemen's |
| Maratto | Kathleen | 2/15/2009 | 9/16/1968 | CPD | Policemen's |
| Mares | Achilles | 2/15/2012 | 2/1/1982 | CPD | Policemen's |
| Martin | Patrick | 4/15/2003 | 6/10/1965 | CPD | Policemen's |
| Massi | John S. | 8/1/2006 | 6/16/1986 | CPD | Policemen's |
| McCann | Kenneth J. | 6/1/1986 | 2/1/1958 | CPD | Policemen's |
| McCarthy | George | 2/16/1999 | 1/24/1966 | CPD | Policemen's |
| McFadden | Robert J. | 1/16/1999 | 10/17/1966 | CPD | Policemen's |
| McGivney | John M. | 4/15/2000 | 3/2/19790 | CPD | Policemen's |
| McNulty | Robert J. | 6/30/2011 | 5/15/1979 | Municipal | Municipal |
| Midona | Barbara A. | 1/15/2013 | 7/19/1982 | CPD | Policemen's |
| Midona, Sr. | Joseph A. | 1/15/2008 | 9/10/1970 | CPD | Policemen's |
| Milam | Mary J. | 1/15/2007 | 12/11/1978 | CPD | Policemen's |
| Milazzo-Triggs | Catherine | Dec'd 5/13/2003 | 00/00/1966 | CPD | Policemen's |
| Miller | James | 4/15/2005 | 00/00/1970 | CPD | Policemen's |
| Miller | John F. | 6/00/1990 | 10/9/1961 | CPD | Policemen's |
| Minich | John | 3/5/2005 | 7/4/1966 | CPD | Policemen's |
| Mitkal | Victor | 1/8/2012 | 10/18/1976 | CPD | Policemen's |

## EXHIBIT 1: NAMED PLAINTIFFS

| Last Name | First Name | Retired | Years of Service/Hire Date | Category | Fund |
|---|---|---|---|---|---|
| Morgan | Charles E. | 8/16/2012 | 7/19/1982 | CPD | Policemen's |
| Morgan, Jr. | Walter J. | 8/16/1996 | 6/1/1966 | CPD | Policemen's |
| Morley | Christine | 1/16/2006 | 4/26/1976 | CPD | Policemen's |
| Morse | Robert C. | 1/15/1999 | 2/6/1966 | CPD | Policemen's |
| Mostacchio | Santo V. | 3/31/2001 | 12/14/1970 | CPD | Policemen's |
| Mueller | Joan | 4/00/1980 | 00/00/1955 | CPD | Policemen's |
| Munoz | Luis | 4/13/2012 | 3/4/1985 | CPD | Policemen's |
| Murphy | Marie Irene | 2/15/2002 | 11/00/1973 | CPD | Policemen's |
| Murray | Michael M. | 10/1/1998 | 2/20/1973 | CPD | Policemen's |
| Mushol | Dennis | 11/15/2012 | 8/11/1986 | CPD | Policemen's |
| Nagle | Jeffery Jon | 1/5/2001 | 6/15/1970 | CPD | Policemen's |
| Nakaguchi | Ann M. | 7/30/2010 | 3/16/1981 | CPD | Policemen's |
| Nauer | Donald B. | 4/15/1999 | 9/14/1970 | CPD | Policemen's |
| Nieckula | Cynthia | 11/1/2008 | 6/8/1981 | CPD | Policemen's |
| Nork | Charles | 7/19/1995 | 6/27/1966 | CPD | Policemen's |
| Nyhan | Thomas P. | 1/5/1997 | 9/27/1965 | CPD | Policemen's |
| O'Connor | Margaret | 00/00/1987 | 00/00/1949 | CPD | Policemen's |
| Ogarek | Joseph | 07/00/2002 | 09/00/1969 | CPD | Policemen's |
| Olivieri | Edwin | 10/22/1991 | 5/9/1966 | CPD | Policemen's |
| O'Malley | Francis | 10/1/1988 | 00/00/1948 | CPD | Policemen's |
| Onesto | Philip | 2/15/1986 | 9/1/1958 | CPD | Policemen's |
| O'Reilly | Bernard | 3/16/1991 | 5/15/1956 | CPD | Policemen's |
| O'Rourke | James A. | 5/7/1997 | 12/11/1967 | CPD | Policemen's |
| Oskielunas | Adam B. | 00/00/1984 | 00/00/1952 | CPD | Policemen's |
| Ott | Roy J. | 3/5/1996 | 1/2/1961 | CPD | Policemen's |
| Palmer | Ronald A. | 9/15/2005 | 6/14/1971 | CPD | Policemen's |
| Paoletti | James M. | 11/16/2008 | 11/2/1970 | CPD | Policemen's |
| Paoletti | Grayceanne | 11/16/2008 | 6/23/1980 | CPD | Policemen's |
| Pappalardo | John C. | 4/1/2010 | 6/8/1981 | CPD | Policemen's |
| Parizanski | Paul | 1/15/2001 | 2/19/1962 | CPD | Policemen's |
| Patt | Corinne | 00/1976 | 00/00/1946 | CPD | Policemen's |
| Pemberton | Patrick M. | 8/16/1999 | 8/13/1962 | CPD | Policemen's |
| Peron | Robert J. | 4/15/2004 | 10/22/1973 | CPD | Policemen's |
| Pizzo | Angeline | 00/00/1988 | 00/00/1957 | CPD | Policemen's |
| Poedtke | Ronald | 03/00/1988 | 03/00/1959 | CPD | Policemen's |
| Poholik | Peter F. | 1/1/1998 | 04/00/1965 | CPD | Policemen's |
| Pontrelli | Darlene | 11/30/2000 | 3/16/1957 | CPD | Policemen's |
| Ptak | Theodore | 2/15/2009 | 7/3/1967 | CPD | Policemen's |
| Quinn | Sylvia A. | 8/15/2008 | 4/26/1976 | CPD | Policemen's |
| Quinn | Robert F. | 07/00/1999 | 6/1/1964 | CPD | Policemen's |

## EXHIBIT 1: NAMED PLAINTIFFS

| Last Name | First Name | Retired | Years of Service/Hire Date | Category | Fund |
|---|---|---|---|---|---|
| Ratledge | Robert D. | 1/16/1995 | 3/1/1959 | CPD | Policemen's |
| Reiter | Mark | 8/16/2002 | 3/19/1973 | CPD | Policemen's |
| Retzke | Gery | 4/27/2011 | 3/27/1991 | CPD | Policemen's |
| Reynolds | Thomas A. | 1/20/1999 | 8/15/1966 | CPD | Policemen's |
| Rhoden | Dawn | 9/15/2006 | 6/14/1982 | CPD | Policemen's |
| Rhoden | Ralph | 8/15/2004 | 6/8/1981 | CPD | Policemen's |
| Rieck | Judith | 2/1/1995 | 5/18/1981 | CPD | Policemen's |
| Rimkus | Stanley | 6/15/2008 | 4/4/1977 | CPD | Policemen's |
| Riordan | Ann | 4/15/2009 | 7/16/1973 | CPD | Policemen's |
| Rodgers | Audrey | 1/10/2010 | 10/13/1986 | CPD | Policemen's |
| Rohloff | Richard P. | 5/4/2004 | 2/22/1971 | CPD | Policemen's |
| Rooney Sr. | Patrick F. | 6/16/2006 | 10/25/1971 | CPD | Policemen's |
| Roscich | Anthony M. | 11/29/2000 | 6/20/1966 | CPD | Policemen's |
| Ross | Kenneth C. | 4/15/2002 | 10/23/1972 | CPD | Policemen's |
| Rowan | Michael | 1/15/1998 | 7/8/1968 | CPD | Policemen's |
| Rowan | Karen | 3/20/2006 | 7/19/1982 | CPD | Policemen's |
| Rowan | Richard | 2/16/2004 | 10/23/1973 | CPD | Policemen's |
| Ruback | Charles R. | 5/15/2004 | 3/2/1970 | CPD | Policemen's |
| Rumsfeld | Alma | 6/19/2009 | 6/16/1986 | CPD | Policemen's |
| Ryan | David | 11/00/2003 | 11/1/1977 | CPD | Policemen's |
| Sandow | Catherine A. | 1/10/2007 | 10/13/1986 | CPD | Policemen's |
| Sandow | James | 1/15/2000 | 6/1/1966 | CPD | Policemen's |
| Sappanos | Thomas | 1/16/2008 | 10/18/1976 | CPD | Policemen's |
| Sarnowski | Ret. Sgt. Robe | 5/16/1999 | 6/14/1971 | CPD | Policemen's |
| Sasso | Kathryn | 6/1/2009 | 5/18/1981 | CPD | Policemen's |
| Scacchitti | Raymond | 00/00/1990 | 00/00/1982 | Laborers | Laborers |
| Scalise | Anthony J. | 4/16/2007 | 11/20/1967 | CPD | Policemen's |
| Schrager | Daniel V. | 6/22/1998 | 6/15/1970 | CPD | Policemen's |
| Schreiner | Angela M. | 9/3/1996 | 6/27/1966 | CPD | Policemen's |
| Schultz | Marshall A. | 3/16/2006 | 10/23/1972 | CPD | Policemen's |
| Schwab | John | 6/19/2012 | 3/1/1982 | CPD | Policemen's |
| Schwartz | Gerald | 2/1/1986 | 10/00/1957 | CPD | Policemen's |
| Sebastian, Jr. | Roy D. | 6/16/1993 | 3/16/1973 | CPD | Policemen's |
| Seils | Richard C. | 9/1/1990 | 9/1/1956 | CPD | Policemen's |
| Selke | William J. | 5/16/1998 | 10/17/1966 | CPD | Policemen's |
| Selke | Jerome C. | 3/11/1994 | 2/15/1965 | CPD | Policemen's |
| Seyfert | Judith A. | 2/15/2005 | 1/3/1977 | CPD | Policemen's |
| Seyfert | Eugene H. | 2/21/2010 | 4/4/1977 | CPD | Policemen's |
| Shuman | Bernard | 5/16/1997 | 3/16/1959 | CPD | Policemen's |
| Signoretti | J. Robert | | 10/22/1973 | CPD | Policemen's |

## EXHIBIT 1: NAMED PLAINTIFFS

| Last Name | First Name | Retired | Years of Service/Hire Date | Category | Fund |
|---|---|---|---|---|---|
| Sloma | Raymond T. | 4/15/1999 | 8/19/1966 | CPD | Policemen's |
| Smith | Deborah K. | 11/15/2001 | 10/18/1976 | CPD | Policemen's |
| Smith | Charles J. | 6/16/1998 | 3/11/1968 | CPD | Policemen's |
| Sobczyk | Jane | Dec'd. 1/1981 | 10/16/1957 | CPD | Policemen's |
| Sowinski | Ronald | 8/00/1995 | 7/11/1966 | CPD | Policemen's |
| Specht | Robert | 1/16/1999 | 9/14/1970 | CPD | Policemen's |
| Spedale | Dominic | 6/16/1989 | 6/1/1956 | CPD | Policemen's |
| Spratt | Doris | Dec'd 10/10/1983 | 00/00/1955 | CPD | Policemen's |
| Stampnick | Raymond L. | 3/15/2000 | 1/19/1970 | CPD | Policemen's |
| Staszak | Norbert | 8/16/2003 | 11/14/1966 | CPD | Policemen's |
| Steinmeier | Arthur M. | 9/15/1995 | 12/19/1966 | CPD | Policemen's |
| Strazzante | Charles M. | 3/15/1998 | 3/3/1970 | CPD | Policemen's |
| Suess | Robert | 2/15/2004 | 2/27/1967 | CPD | Policemen's |
| Sullivan | Michael T. | 6/15/2000 | 6/4/1973 | CPD | Policemen's |
| Sutor | Yvonne | 11/16/2007 | 7/18/1977 | CPD | Policemen's |
| Swiatkowski | Daniel | 10/14/2002 | Jun-73 | CPD | Policemen's |
| Szparkowski | Debra | 8/19/2008 | 8/11/1966 | CPD | Policemen's |
| Szparkowski | Gary | 2/3/2005 | 5/23/1975 | CPD | Policemen's |
| Tapkowski | Roman | 2/16/2001 | 10/28/1968 | CPD | Policemen's |
| Terrance | Timothy J. | 5/21/1999 | 2/27/1978 | CPD | Policemen's |
| Thulis | John | 6/7/1997 | 6/6/1966 | CPD | Policemen's |
| Tobuch | Lawrence J. | 3/23/1993 | 3/12/1962 | CPD | Policemen's |
| Tolley | John F. | 6/1/1993 | 11/4/1963 | CPD | Policemen's |
| Tomaska | Joseph A. | 4/15/2002 | 5/30/1966 | CPD | Policemen's |
| Tracey | Robert J. | 4/15/1989 | 12/18/1967 | CPD | Policemen's |
| Troken | Eugene B. | 06/00/1998 | 06/00/1964 | CPD | Policemen's |
| Underwood | Michael W. | 4/15/2002 | 10/23/1972 | CPD | Policemen's |
| Utz | James J. | 8/15/1999 | 8/12/1968 | CPD | Policemen's |
| Utz | Charles A. | 10/16/2012 | 2/14/1989 | CPD | Policemen's |
| Vitaioli | Paul | 4/1/2002 | 7/1/1969 | CPD | Policemen's |
| Vitaioli | Kathleen | 4/15/2007 | 3/9/1987 | CPD | Policemen's |
| Vogt | Vince | 5/2/2005 | 3/19/1973 | CPD | Policemen's |
| Vucko | Ralph E. | 04/00/2000 | 12/11/1967 | CPD | Policemen's |
| Vuich | Joseph M. | 4/00/1996 | 4/00/1961 | CFD | Fireman's |
| Wagner | Patricia M. | 2/23/1986 | 00/00/1955 | CPD | Policemen's |
| Webb | James E. | 12/31/2001 | 10/23/1972 | CPD | Policemen's |
| Webb | Laura M. | 4/6/2002 | 9/29/1980 | CPD | Policemen's |
| Weber | Matthew E. | 6/16/2000 | 6/4/1973 | CPD | Policemen's |
| Welninski | Anthony | 2/15/2004 | 11/28/1966 | CPD | Policemen's |
| Wengel | David J. | 5/15/2001 | 11/25/1968 | CPD | Policemen's |

## EXHIBIT 1:  NAMED PLAINTIFFS

| Last Name | First Name | Retired | Years of Service/Hire Date | Category | Fund |
|---|---|---|---|---|---|
| Whalen | Thomas Micha | 3/15/2004 | 6/145/1971 | CPD | Policemen's |
| White | Glenn L. | 4/15/1999 | 2/19/1973 | CPD | Policemen's |
| White | Ralph | 4/15/2001 | 4/3/1972 | CPD | Policemen's |
| Wiberg | Wayne A. | 2/15/2005 | 7/18/1966 | CPD | Policemen's |
| Winter | Joyce A. | 2/7/1990 | 8/13/1962 | CPD | Policemen's |
| Wolfe | Joseph | 6/1/2001 | 8/2/1962 | CPD | Policemen's |
| Woody | Lorraine | Dec'd 1978 | 03/00/1959 | CPD | Policemen's |
| Yablong | Phil H. | 2/1/1984 | 12/17/1947 | CPD | Policemen's |
| Young | Phillip P. | 4/15/2002 | 2/28/1978 | CPD | Policemen's |
| Zolna | Clifford A. | 4/2/2003 | 3/19/1973 | CPD | Policemen's |
| Zurawik | James E. | 4/15/2004 | 4/4/1977 | CPD | Policemen's |
| Zurawski | James J. | 7/5/1990 | 5/29/1961 | CPD | Policemen's |
| | | | | | |
| Total Named Plaintiffs:  332 | | | | | |

FILED - CH

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

2013 JUL 26 PM 3: 32

Michael W. Underwood, Joseph M. Vuich, Raymond
Scacchitti, Robert McNulty, John E. Dorn, William J.
Selke, Janiece R. Archer, Dennis Mushol, Richard
Aguinaga, James Sandow, Catherine A. Sandow, Marie
Johnston, and 320 other Named Plaintiffs listed in
Exhibit 1,

           Plaintiffs,

vs.

CITY OF CHICAGO, a Municipal Corporation,

           Defendant,

and

Trustees of the Policemen's Annuity and Benefit Fund
of Chicago:  Amer Ahmad, Juan Carlos Avila, Kenneth
Hauser, Michael K. Lappe, James P. Maloney,
Stephanie Neely, Lois A. Scott, Brian Wright; and

Trustees of the Firemen's Annuity and Benefit Fund of
Chicago:  Amer Ahmad, Walter Carlson, Dan P.
Fabrizio, Anthony Martin, Stephanie Neely, Michael
Shanahan, Charles Stewart, III, Susana Mendoza; and

Trustees of the Municipal Employees' Annuity and
Benefit Fund of Chicago: Amer Ahmad, Anthony
Clancy, Martin J. Durkan, Timothy G. Guest, Stephanie
Neely; and

Trustees of the Laborers' & Retirement Board
Employees' Annuity & Benefit Fund of Chicago:  Amer
Ahmad, John Arvetis, Carol Hamburger, William L.
Irving, Michael LoVerde, Stephanie Neely, Joseph
Rinella, Lois Scott,
           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CLERK
DOROTHY BROWN

Case No. 2013-CH-17450

**CLASS ACTION
COMPLAINT**

JURY TRIAL DEMANDED

Previous Nos. 01 CH 4962 and
87 CH 10134

---

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on August 1, 2013 at 8:45 a.m., or as soon thereafter as counsel
may be heard, I shall appear before the Rita M. Novak, or any judge sitting in her stead, in the

1

Courtroom usually occupied by her in Room 2402 of the Richard J. Daley Center, Chicago, Illinois, and shall then and there present **Plaintiff Underwood's Motion for Substitution of Judge,** a copy of which is attached.

Date: July 26, 2013

By: _____
Clinton A. Krislov
Attorney for Plaintiff

Clinton A. Krislov
Kenneth T. Goldstein
KRISLOV & ASSOCIATES, LTD.
20 North Wacker Drive, Suite 1300
Chicago, IL 60606
(312) 606-0500
Attorney Nos. 26711/91198
clint@krislovlaw.com
ken@krislovlaw.com

2

*FILED - CH*
*CLERK OF THE CIRCUIT*

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

*2013 JUL 26 PM 3: 33*

| | |
|---|---|
| Michael W. Underwood, Joseph M. Vuich, Raymond Scacchitti, Robert McNulty, John E. Dorn, William J. Selke, Janiece R. Archer, Dennis Mushol, Richard Aguinaga, James Sandow, Catherine A. Sandow, Marie Johnston, and 320 other Named Plaintiffs listed in Exhibit 1, | )<br>)<br>)<br>) *DOROTHY BROWN CLERK*<br>)<br>)<br>) Case No. 2013-CH-17450<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) **CLASS ACTION**<br>) **COMPLAINT**<br>) |
| CITY OF CHICAGO, a Municipal Corporation, | )<br>) **JURY TRIAL DEMANDED**<br>) |
| Defendant, | ) Previous Nos. 01 CH 4962 and<br>) 87 CH 10134 |
| and | ) |
| Trustees of the Policemen's Annuity and Benefit Fund of Chicago: Amer Ahmad, Juan Carlos Avila, Kenneth Hauser, Michael K. Lappe, James P. Maloney, Stephanie Neely, Lois A. Scott, Brian Wright; and | )<br>)<br>)<br>) |
| Trustees of the Firemen's Annuity and Benefit Fund of Chicago: Amer Ahmad, Walter Carlson, Dan P. Fabrizio, Anthony Martin, Stephanie Neely, Michael Shanahan, Charles Stewart, III, Susana Mendoza; and | )<br>)<br>)<br>) |
| Trustees of the Municipal Employees' Annuity and Benefit Fund of Chicago: Amer Ahmad, Anthony Clancy, Martin J. Durkan, Timothy G. Guest, Stephanie Neely; and | )<br>)<br>)<br>) |
| Trustees of the Laborers' & Retirement Board Employees' Annuity & Benefit Fund of Chicago: Amer Ahmad, John Arvetis, Carol Hamburger, William L. Irving, Michael LoVerde, Stephanie Neely, Joseph Rinella, Lois Scott, | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**MOTION FOR SUBSTITUTION OF JUDGE**

Plaintiff, Michael W. Underwood, by his attorneys, Clinton A. Krislov, pursuant to 735 ILCS 5/2-1001, requests that this Court grant a substitution of judge as of right. In support of this motion, plaintiff states:

a)    Pursuant to 735 ILCS 5/2-1001(a)(2), each party is entitled to one substitution of judge without cause as a matter of right.

b)    An application for substitution of judge as of right shall be made by motion and shall be granted if it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case. 735 ILCS 5/2-1001(a)(2)(ii).

c)    No trial or hearing has begun on this case, and the presiding judge has not ruled on any substantial issue in the case.

WHEREFORE, plaintiff respectfully requests that the Court grant his motion for substitution of judge as of right.

_____
Attorney for Plaintiff

Clinton A. Krislov
Kenneth T. Goldstein
Krislov & Associates, Ltd.
20 N. Wacker Drive, Suite 1300
Chicago, Illinois 60606
Atty. Firm No. 91198

## CERTIFICATE OF SERVICE

I, Clinton A. Krislov, an attorney, state that on July 26, 2013, I caused a courtesy copy of the foregoing **Notice of Motion** and attached **Motion for Substitution of Judge** to be served upon the parties listed below on the Service List via facsimile and via U.S. Mail, postage prepaid and properly addressed, by depositing same in the mailbox located at 20 N. Wacker Drive, Chicago, Illinois.

_____
Clinton A. Krislov

## SERVICE LIST

Jennifer Naber
Joseph Gagliardo
Laner, Muchin
515 N. State Street, 28th Floor
Chicago, Illinois 60610
Phone: 312-494-5359
Fax: 312-467-9479
*Counsel for The City of Chicago*

Mr. Edward J. Burke
Mary Patricia Burns
Burke, Burns & Pinelli Ltd.
Three First National Plaza, Suite 4300
Chicago, IL 60602
Phone: 312-541-8600
Fax: 312-541-8603
*Counsel for The Firemen's Annuity and Benefit Fund of Chicago and The Municipal Employees' and Benefit Fund of Chicago*

Mr. Graham Grady
Mr. Cary Donham
Shoefsky & Froelich
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601
Phone: 312-527-4000
Fax: 312-527-4011
*Counsel for the Municipal Employees' Annuity and Benefit Fund of Chicago*

Mr. David R. Kugler
David R. Kugler & Associates, Ltd.
100 N. LaSalle, Suite 501
Chicago, Illinois 60602
Phone: 312-782-5430
Fax: 312-782-5450
*Counsel for the Policemen's Annuity and Benefit Fund of Chicago*

Transfer Order Within Division | (Rev. 12/16/10) CCCH 0601

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

Underwood et al + (320 named Plaintiff

v.                                        No. 13 CH 17450

City of Chicago, et al

### TRANSFER ORDER WITHIN DIVISION

The above-entitled and numbered cause having been previously assigned to Judge

Novak _____, Chancery Calendar # ____9____, said Judge having

4311 ☑ granted a change of Judge.

8211 ☐ recused himself/herself.   Underwoods motion

For the following reasons: ∧ under 73T ILCS 5/2-1001(a)(2) is granted.
movant, Michael ~~This Plaintiff~~ is entitled to a substitution without cause as a matter of right

4282 It is hereby transferred to Judge Moshe Jacobius, Presiding Judge of the Chancery Division for the purpose of reassigning said cause.

**JUDGE RITA M. NOVAK**

| Judge | AUG 0 2 2013 | Judge No. |

Circuit Court-1741

8202 IT IS HEREBY ORDERED that the above-entitled cause is hereby forwarded to DOROTHY BROWN, Clerk of the Circuit Court of Cook County for reassignment. IT IS FURTHER ORDERED that said Clerk shall draw a new calendar number by random electronic process from the category bank designated in the original pleading.

MOSHE JACOBIUS                    No. 1556
PRESIDING JUDGE
CHANCERY DIVISION

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**